By the Court. Oakley, Ch. J.
In these cases the widows of several persons killed by the falling of a wall in Water street, employed two attorneys of this court to commence actions against the defendants, Whitney & Tucker, to recover damages for the losses they had sustained, by the death of their husbands. The suits were commenced in the name of one of these attorneys, the other acting as counsel. Soon after the suits were instituted, a compromise was effected by Mr. Whitney’s paying to the attorneys $2000 on account of the respective plaintiffs, and $300 as the remuneration for their services in the suits. On receiving this money, the attorneys proceeded to settle with the plaintiffs, who appear to have been illiterate persons, unable to write their names, by paying to them the sum of $100 each, retaining besides the compensation already received from Mr. Whitney, $150 in each of the cases, or $1200 in the aggregate; so that all the plaintiffs received was $800 out of the $2300 paid by Whitney. The parties, on receiving the amount, executed to each of these attorneys, a release acknowledging the receij>t of the money, in full satisfaction and discharge. This relief was duly acknowledged by each of the parties, and the officer who took the acknowledgments, testifies that the parties were informed of their tenor and effect.
Application is now made to us on behalf of these parties, to vacate the settlement, on the ground that it was made- in ignorance of the real amount paid by Mr. Whitney to the attorneys, and that it is oppressive and unjust. We are also asked to strike the attorneys from the roll.
In answer to the application, it is averred by the attorneys that these claims were all assigned absolutely to one of them before the commencement of the suit, and that what was paid by them to the parties was a voluntary payment, and a mere gratuity, and that at the time of the assignment it was agreed that the proportion to be paid in case of success, should be left entirely to-the generosity of the attorneys. That at the time of *698 the execution of the releases, the matter was fully explained to the parties, who expressed themselves fully satisfied. Assignments were produced, executed to one of the attorneys before the suits were commenced, transferring all the right of the parties, to damages, and duly acknowledged.
Without considering the question whether claims of this character can be assigned or not; if they were in fact assigned absolutely, the actions should have been instituted in the name of the attorney who became the assignee. The circumstances attending these cases, however, show conclusively, that the claims were assigned as collateral security for the costs and services of the attorney. It is contended that under the - code, arrangements may be made between attorney and client as to compensation in suits, and that with such agreements, the court has no right to interfere. Without considering the question whether the statutes of champerty and maintenance have been abrogated by the provisions of the code in reference to the subject of costs, which we very much doubt, we do not think that the court is deprived of the power of looking into these arrangements between attorney and client. Before the code, the court had the general power of examining into bargains of this character, to see that they were not unreasonable or oppressive, and the power has not been taken away. There are numerous cases in the books where courts have exercised this superintending power. Even where a judgment has been confessed by a client in favor of an attorney, although resting upon a record of the court which has received its sanction, the courts have not hesitated to open it and investigate the transaction. Many cases of this character are collected in Graham’s Practice, 28. This power results from the general superintending power of the court over its officers, and the very peculiar relations which exist between clients and attorneys. It is a power which should be exercised with caution, but which is nevertheless to be exercised firmly where a necessity for it exists.
It is a striking feature in these cases, that when making the settlement with the attorney, the parties were not apprised of the amount actually paid by Whitney. It nowhere appears that *699 they had any knowledge of it. The commissioner testified that the releases were fully explained to them, and that they expressed themselves aware of their contents, and fully satisfied with what they received; but it does not appear that the amount which the attorneys had received on account of those claims, was ever stated to them. We do not mean to decide that the amount retained by the attorneys was too great, or disproportionate to the valúe of the services rendered by them; although it certainly has that appearance at first blush. But we think it reasonable that the matter should be inquired into, and for that purpose shall direct a reference, where the attorneys will be enabled to show the reasonableness of the amount charged. On receiving the report" of the referee, «we can make such order in the premises as shall be just.
The case came before the court March 22d, on the report of the referee, to which exceptions were taken by the attorneys implicated. After hearing counsel, the court (all the justices being present) allowed to the attorneys, besides the three hundred dollars paid to them by the defendants when the suits were settled, and $115, which they had expended in procuring security for the plaintiffs on taking out letters of administration, and made a rule requiring them to pay the balance of the $1,200, retained by them, to the clerk for the plaintiffs, with the costs of the proceedings against them, and in default of payment, that they be committed. A doubt being suggested as to the power of this court to strike attorneys from the roll, under the judiciary act of 1847, the court omitted to pass upon that branch of the application, leaving the parties to apply to the supreme court, if so advised.