IN THE MATTER OF THE APPLICATION OF MENDAL FRIEDMAN, FOR AN ORDER REQUIRING S. ALBERT MINCHO TO PAY OVER MONEYS COLLECTED BY HIM AS AN ATTORNEY, AND OF NATHAN WALD FOR A LIKE ORDER.

*Attorney — his client can claim any profits realized by him in purchasing property at a sale under an execution — the court will compel the attorney to pay over moneys, by a summary proceeding,*

Where, upon the sale of a stock of goods under an execution issued upon a judgment recovered against the owner, the attorney for the judgment creditor purchases the goods and thereafter sells them at an advance, his client is entitled to claim and receive the profits so realized.

The court may in such a case, upon an application made by the client, even before the execution has been actually returned, ascertain in a summary manner the amount due, and require the attorney to pay it over to him, or in default thereof direct that he be committed to close custody in prison.

APPEAL by the attorney, Albert Mincho, from an order requiring him to pay over the sum of $1,460, besides the costs and expenses of the proceedings.

*Peter L. Mullaly,* for S. Albert Mincho, appellant.

*J. H. Goodman,* for the petitioners, respondents.

DANIELS, J.:

The attorney, S. Albert Mincho, was employed by the petitioners to collect debts owing to them respectively by Samuel Goodman. Suits were instituted upon the demands and judgments recovered in favor of the creditors. Executions were issued upon these judgments, and a stock of dry goods and another of boots and shoes were levied upon and sold under them. The dry goods were purchased by Bloom & Morse nominally for the creditors in the executions, but they never transferred or turned over the goods so purchased to the creditors, and do not appear to have purchased them under any authority from the creditors. The goods were placed in the possession of the wife of the judgment debtor, and she paid over moneys received in the course of sales made from them to the creditors, but to what extent such payments were made

was not shown.   The evidence, therefore, did not establish the fact that either of the judgments, or any considerable portion of them, had been paid or satisfied in this manner.   And the proofs presented on the part of the creditors show that more than the amount required to be paid by the order still remains due upon the judgments.

The stock of boots and shoes were purchased under the execution sale by Mincho himself, for the sum of $997, and they were delivered to him by the person making the sale.   As to the debtor in the executions, these proceedings satisfied the judgments.   But that by no means relieved the attorney from his obligation to pay over the proceeds of the property to his clients.

Under his authority this stock of boots and shoes, within about six weeks after its purchase by him, was sold at another auction sale, and the sum of $2,900.29 was realized as its proceeds.   The attorney alleged that he had paid out more than the sum for which he himself had purchased the stock of boots and shoes, in the way of expenses in the suits and proceedings, and that the purchase was made for himself, and the excess realized over his bid at the execution sale, by the sale afterwards made under his authority, belonged to himself and not to the petitioners, who had employed him to collect their debts.

This was a position which had no sanction whatever in the law relating to the relations and obligations of an attorney employed to collect a debt as this attorney was in this proceeding.   For it does not permit an attorney, sustaining such a relation as he did to the persons who had employed him to collect their debts, to purchase the property levied upon and sold to satisfy the executions, and then hold it and make a profit out of it for himself by its subsequent sale on his own account.   (*Hawley* v. *Cramer*, 4 Cow., 717, 718; *Brock* v. *Barnes*, 40 Barb., 521; *Case* v. *Carroll*, 35 N. Y., 385.)

He cannot legally place himself in such a relation of hostility to the persons by whom he had been employed.   It was their interests that he was required to protect and promote and not his own, and when an attorney so far disregards his duties in this respect as to endeavor to make a profit at the expense of his clients, or by sacrificing their interests to his own, courts of justice are required to interfere, for the purpose of preventing the consummation of such an unlawful design.

When the attorney purchased this stock of boots and shoes under the execution sale, the purchase legally considered was that of the persons whom he represented in the proceedings. The property purchased was theirs and not his, and they became entitled to the advance obtained from it by means of the second sale made under the authority and direction of the attorney. The proceeds of that sale were the creditors' and not the attorney's, and he was bound to pay the same over to them when that was demanded; and such a demand is shown to have been made in the case.

According to the evidence given by Mrs. Goodman the attorney had in his hands a balance of money amounting to the sum of $1,980, which he stated he would pay over to Mr. Friedman. This he himself denied. But it is very probable that this statement was true, for it cannot be credited that the difference between that sum and the sum of $2,900.29, the amount resulting from the second sale of the boots and shoes, could possibly have been exhausted by the expenses of the legal proceedings.

It is not credible that nearly $1,000 could have lawfully been expended in the levy upon and the custody of and sale of this stock of boots and shoes, or of this stock and the stock of dry goods. In the testimony of the attorney himself he stated that he had retained out of the proceeds of the shoes about $1,000 or $1,500, which, from the admission mentioned by Mrs. Goodman, and which was probably made as she stated it, was much less than the balance actually in his hands. But as the figures were given by him the items of expenses, if they were in fact paid, still left a balance of $1,440 in his hands, while by the adjudication in the order from which the appeal has been taken he has been required to pay only the sum of $1,460. This sum mentioned in the order is probably much less than he should really have been required to pay over to his clients, the petitioners in this proceeding, and for that reason no reduction in the amount can either properly or possibly be made. This was so much money found in his hands belonging to his clients and fraudulently withheld from them by him and appropriated to his own use. For its recovery by means of summary proceedings of the nature of those resulting in the order very ample authority has been vested in the court. And the dilatory proceedings of an action are not required to be submitted to for that purpose. But the court can

interfere in a summary way as it did in this case, and after ascertaining the amount which should be paid over require such payment to be made, and in default of the attorney's complying with the order, to commit him to close custody in prison. This practice has been fully sanctioned by the authorities. (*Barry* v. *Whitney*, 3 Sandf., 696; *Matter of Dakin*, 4 Hill, 42; *Matter of Max Steinert*, 24 Hun, 246; Code of Civil Pro., § 14, subs. 1, 3.)

The order which was made in this case was therefore warranted by the evidence and the law applicable to the proceedings.

It was not necessary that it should have been delayed until the executions issued upon the judgments had been actually returned. Neither was it necessary that the petitioners themselves should have appeared personally in the proceedings or upon the hearing before the referee.

There was no error which the attorney can complain of in the determination of the referee to strike out a certain portion of the evidence which had been given, for it was beneficial and serviceable to the petitioners rather than to him. Its omission from the case was of no disadvantage whatever to him.

The inquiry allowed by the referee, which was resisted as a privileged communication, was in no sense of that nature. Neither was there any impropriety in allowing other questions, which were made the subjects of objection, to be answered by the witnesses. The case was well made out, and nothing was shown which by any possibility can relieve the attorney from his obligation to comply with the terms of the order which was made. It should, accordingly, be affirmed, with ten dollars costs, besides the interest upon the amounts required to be paid, and the disbursements on the appeal.

DAVIS, P. J., and BRADY, J., concurred.

Order affirmed, with ten dollars costs, besides the interest upon the amounts required to be paid, and the disbursements upon the appeal.