ORVILLE M. BARKLEY, Respondent, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Appellant.

*Railroad company — proof of previous similar accidents occurring under the same engineer — employee struck by a locomotive run in advance of schedule time and in violation of the rules — testimony as to the probable duration of injuries — delay in moving to set aside a verdict.*

In an action brought to recover damages for personal injuries resulting from the alleged negligence of the defendant, a railroad company, the court, where it appears that the engineer in charge of the locomotive by which the injury was caused had, while in the employ of the defendant, killed and injured several persons, may properly charge the jury that, while no one of these occurrences except one would justify a finding that the defendant was negligent in continuing to employ such engineer, they all might be considered by the jury in connection with that one in determining that question.

An employee of a railroad, who was directed to deliver from the station a package to a train standing at the station, before crossing a track on which a locomotive was scheduled to be due within a few minutes, looked in both directions and saw no approaching trains, but in returning was struck by the locomotive, which was seven minutes ahead of the prescribed time, and which approached without sounding the bell or whistle, at the rate of thirty miles an hour, passing over the space in which it could have been seen by him in less

than two minutes, although the rules of the company required the engineer, in approaching any station where another train was due or might be expected, to have his train well under control and to stop before passing when the other train was seen receiving or discharging passengers.

*Held*, that the inferences to be drawn from these facts were for the jury, which was justified in finding that the employee did not, by his own negligence, contribute to the accident.

Where a surgeon who has treated the injured party testifies that an operation was performed, and describes injuries which were necessarily permanent, and another physician who has had the plaintiff under his care for two or three years describes physical injuries which, from their very nature, were permanent, he may express an opinion as to the probable duration of such injuries.

A party seeking to have a verdict reviewed, as contrary to the weight of evidence, should not, for eleven years, delay moving for such relief; and where no excuse is shown for such delay, he is not entitled to have the motion as favorably considered as it would have been had it been promptly made.

APPEAL by the defendant, The New York Central and Hudson River Railroad Company, from an order of the Supreme Court, made at the Monroe Circuit and entered in the office of the clerk of the county of Monroe on the 10th day of August, 1892, denying its motion for a new trial made upon the minutes, after a trial at the Monroe Circuit, which resulted in the verdict of a jury in favor of the plaintiff.

*Edward Harris*, for the appellant.

*Thomas Raines*, *Stephen K. Williams* and *Frank C. Sargent*, for the respondent.

FOLLETT, J. :

This action was began September 3, 1885, to recover damages for a personal injury inflicted September 18, 1882, by the negligence, it is alleged, of the defendant and its employees. The action was tried in October, 1887, and resulted in a verdict of $7,000 damages. Upon the coming in of. the verdict the court entertained a motion for a new trial on the minutes, which was argued in July, 1892, and August 8, 1892, an order was entered, entitled as of the Circuit at which the trial was had, denying the motion and giving the defendant sixty days in which to serve a proposed case containing exceptions. November 21, 1892, the defendant appealed from the order denying its motion for a new trial, and July 12, 1898, the case containing exceptions was settled and filed in the office of the

clerk of the county of Monroe and annexed to the judgment roll in the action.

In July, 1882, the plaintiff, then eighteen years of age, was employed by the defendant at its station at Fairport, N. Y., to load and unload baggage, freight and express packages, acting under the direction of the station agent. At about half-past seven o'clock in the morning of September 18, 1882, the plaintiff was directed by the station agent to take a package from the station house, which stood on the south side of defendant's tracks, across track No. 1 and deliver it to the "Lyons Accommodation," a west-bound passenger train due to leave Fairport at seven-thirty-six A. M., and then standing on track No. 2. The plaintiff delivered the package as directed, and started to return to the station house, when he was struck at seven-thirty-six A. M. and severely injured by locomotive No. 564, running east on track No. 1 as the second section of passenger train No. 6, known as the "Special New York Express," running east, due to pass Fairport, without stopping, at seven-thirty-one A. M., and did pass that station on the morning of the accident at seven-thirty-three A. M., two minutes late. Train No. 6 and the Lyons Accommodation had been running on this time since June 25, 1882. By the time card train No. 6 should, as before stated, have passed Fairport, without stopping, at seven-thirty-one A. M. and five minutes before the Lyons Accommodation left the station, and did pass the station on the morning of the accident three minutes before the Lyons Accommodation should have left. This is the time, as testified to by Drexelius, defendant's train dispatcher at Rochester; so that locomotive No. 564 was running at a high rate of speed as the second section of No. 6, and three minutes behind it. Under the rules both train No. 6 and the locomotive were required to pass Fairport without stopping unless otherwise ordered, or unless a passenger train were standing at the station receiving and discharging passengers. As before stated, train No. 6 was an express passenger, and usually was a heavy train and required the assistance of a helping locomotive up the grade from Buffalo to Batavia, at which place its assistance not being longer needed it was ordered to follow ten minutes behind train No. 6 as a second section thereof to Syracuse, from which city it took a train back to Buffalo. This running arrangement had existed since June 25, 1882, and the plaintiff knew

all about the practice. On the morning in question train No. 6 left Rochester at seven-fifteen A. M., on time, and locomotive No. 564, instead of leaving that city at seven-twenty-five A. M., as it should have done, left at seven-twenty A. M., only five minutes behind No. 6. Usually train No. 6, when followed by the locomotive, carried flags indicating that it was followed by a train or a locomotive. Whether flags were carried on the morning of the accident was a disputed question of fact which the jury, under the evidence, was authorized to find either way. Defendant's rule No. 75 provides: "The engineman must approach any station where another train is due or may be expected, with his train well under control, and must stop before passing when the other train is seen receiving or discharging passengers, and in all cases where danger signals are set he must stop before passing such signal." Locomotive No. 564 was run by Luther H. Hart as engineman, and when it passed Fairport the Lyons Accommodation was engaged in receiving and discharging passengers, there being an unusual number present to take that train to attend a fair at Rochester.

On the trial the court submitted special questions of fact to the jury, neither litigant objecting to the form of the questions or asserting that they did not fairly present the issues to the jury.

The minutes of trial which are embraced in the judgment roll contain this entry:

"October 18th, 1887, the jury return into court and say find for the plaintiff for the sum of seven thousand dollars. In addition to to their general verdict the jury answered the questions submitted to them by the court in writing, as follows:

"*First.* At the time the plaintiff was injured was the defendant guilty of an omission of duty to him in retaining Luther H. Hart in its employ and permitting him to run locomotive No. 564? Yes.

"*Second.* When the plaintiff was injured was the defendant guilty of an omission of duty to him in failing to provide necessary and sufficient means to notify engineer of locomotive No. 564 that it was unsafe for him to pass Fairport station at that particular time? Yes."

Before considering the exceptions discussed by the appellant it will be well to bring to mind the rules applicable to the review of

judgments or verdicts resting on answers to "specific questions of fact," or more commonly known as "special findings."

"In case special findings are submitted to a jury (pursuant to sections 1187 and 1188 of the Code of Civil Procedure) which embrace all the material issues of fact and are answered, rulings upon questions of evidence not relevant to the findings submitted are to be disregarded on appeal and so are the exceptions to refusals to charge, unless the requests are germane to the questions submitted. It often happens on trials, before the true issue is developed, that irrelevant evidence of a nature likely to affect a general verdict is received over the objection and exception of one of the litigants, but if the special finding submitted excludes the incompetent evidence from the consideration of the jury the error is not a ground for a new trial. (Thomp. Tr. § 2699.) One of the objects of submitting a special finding is to prevent juries from returning verdicts on their general notions of right and wrong, often influenced by irrelevant evidence or by the arts of skillful counsel, and to compel them to determine whether the facts on which the right to recover depends do or do not exist." (*Bank of British North America* v. *Delafield,* 80 Hun, 564; affd., 152 N. Y. 624. See also *Gundlin* v. *Hamburg American Packet Co.,* 8 Misc. Rep. 291; S. C., with note, 31 Abb. N. C. 437; 20 Am. Law Rev. 366.)

The only important issue not covered by the specific questions was whether the plaintiff by his negligence contributed to the accident.

It is not asserted that the damages awarded are excessive, though it is argued that the court erred in admitting evidence as to the probable duration of the plaintiff's injuries, which is the only exception relating to the admission or exclusion of evidence complained of.

The first question assumes that the accident was caused, in part at least, by the negligence of Luther H. Hart, the engineer in charge of locomotive No. 564. In effect the court, instructed the jury that Hart was negligent, to which instruction no exception was taken. That the evidence was sufficient to authorize the jury to find that Hart was negligent, and that his negligence was a proximate cause of the accident, is apparent. He did not obey the rule requiring him to run his locomotive ten minutes behind train No. 6, but ran it only three minutes behind No. 6 at Fairport station. He passed

that station substantially at full speed, on a running time of more than thirty miles an hour between Rochester and Fairport, notwithstanding that the Lyons Accommodation was standing in front of the station for the purpose of receiving and discharging passengers. The evidence warranted the jury in finding that the bell on locomotive No. 564 was not rung and that its whistle was not sounded as it approached the station, and that no warning was given until the locomotive was within a few feet of the plaintiff and in front of the Fairport station.

Was the evidence sufficient to authorize the submission of the first question to the jury? Hart, who was sworn as a witness, testified that during his service as an engineer for the defendant he had run on to, backed over and killed six persons. He described with some particularity the circumstances under which each person was killed, and also testified that these accidents were reported to the defendant's general officers. Without reciting the evidence, it is sufficient, for the purposes of this opinion, to say that, in my judgment, the evidence was sufficient to justify the submission of the first question to the jury and to sustain its answer. It is conceded that defendant's general officers knew of these accidents, and of the deaths caused by them.

The court in submitting the first question instructed the jury that none of the killings, except the killing of the woman at Lancaster in 1877, was sufficient to charge the defendant with negligence in retaining Hart in its employment. The defendant requested the court to charge that, upon the evidence, the defendant had the right to assume that since the woman at Lancaster was killed in 1877 Hart had become a careful, prudent and competent engineer, entirely fit for the defendant to retain in its service. This request was, in effect, asking the court to instruct the jury as a matter of law that the defendant was not negligent in continuing Hart in its employment as an engineer. Whether the defendant had the right to assume that Hart had become careful, prudent and competent was, under the evidence, a question of fact for the jury and not one of law for the court. The court, after this request, again instructed the jury that none of the deaths and injuries inflicted by locomotives under the management of Hart, other than the death of the woman

at Lancaster, were sufficient, standing by themselves, to justify a finding that the defendant was negligent in continuing to employ Hart; but that these deaths and injuries might be taken into account with the killing of the woman at Lancaster, and from all the evidence that it was a question of fact for the jury whether the defendant was negligent in continuing to employ Hart as an engineer. No exception was taken by the defendant to the admission or exclusion of evidence bearing upon the first question, and the discussion as to the defendant's negligence may well end at this point, for the court instructed the jury that unless one of the questions was found in favor of the plaintiff, a verdict of no cause of action should be rendered, but that in case either question was found for the plaintiff, the jury must then award to him compensation for the damages which he had sustained. The first question being well found and there being no erroneous ruling affecting it, the answer to that question is sufficient to sustain the verdict in so far as the question of defendant's negligence is involved, even though the second question was not well found or was induced by erroneous rulings. Had the second question been answered in the negative, the defendant's negligence would nevertheless have been established. These two questions were separately discussed by the court in submitting the case to the jury, and it is not asserted by the learned counsel for the defendant that the court, in submitting the second question, let fall any remarks likely to affect the jury in its consideration of the first question, nor do I find any such remarks.

Is the evidence sufficient to sustain the finding of the jury that the plaintiff was free from negligence contributing to the accident?

Train No. 6, the Special New York Express, was, as before stated, due to pass Fairport without stopping at seven thirty-one A. M., and did pass that station on the morning of the accident at seven thirty-three A. M., two minutes late, at about which time the Lyons Accommodation, a west-bound passenger train due to leave Fairport at seven-thirty-six A. M., arrived and stopped on track No. 2. Locomotive No. 564, run as second section of train No. 6, should have run ten minutes behind No. 6, but it left Rochester, ten or twelve miles west of Fairport, only five minutes behind No. 6, and actually reached Fairport only three minutes behind it. The plaintiff testified, and there is no evidence to contradict him, that this loco-

motive, on previous occasions, when run as the second section of train No. 6, had never before passed Fairport only three minutes behind No. 6, and had never passed Fairport at full speed when the Lyons Accommodation was standing at the station. The evidence is all to the effect that a person standing near the south rail of track No. 1 had an unobstructed view of the tracks towards the west for at least three-fourths of a mile, and the learned counsel for the defendant argues with great force that if the plaintiff had looked he might have seen the coming locomotive and have avoided the accident. The plaintiff testified that when he passed the northeast corner of the passenger depot, which stood very near track No. 1, he did look in both directions and did not see the locomotive. How much time intervened between his looking and the time he was struck on returning across track No. 1 after having delivered his package to the Lyons Accommodation, standing on track No. 2, does not appear. It is certain that the time was short, as the plaintiff testified that he moved quickly. However, this locomotive, moving at a rate of thirty or more miles an hour, passed over the space in which it could be seen in less than two minutes. The evidence was quite sufficient to justify the jury in finding that the approach of the locomotive was not announced by bell or whistle. The plaintiff delivered his package to the baggage car, which was just in the rear of the locomotive drawing the Lyons Accommodation, which was emitting steam and smoke and making some noise. The plaintiff, as was shown, had knowledge of the method of running these trains, and he was not called on to anticipate the arrival of locomotive No. 564 within three minutes after the passage of train No. 6, seven minutes ahead of time, which was forbidden by the defendant's rules. Nor was the plaintiff called upon to anticipate that this locomotive would pass, without signal, substantially at full speed, between the Lyons Accommodation, then standing at the depot, for the purpose of receiving and discharging passengers, and the passenger depot. The locomotive had never before so passed. Under these circumstances, I think the inferences to be drawn from the situation were for the jury, and that the evidence is sufficient to sustain the finding that the plaintiff did not, by his own negligence, contribute to the accident.

The court did not err in permitting Dr. Ingraham to express an

opinion as to the probable duration of the plaintiff's injuries. (*Griswold* v. *N. Y. C. & H. R. R. R. Co.*, 115 N. Y. 64; Thomas Neg. 631, *et seq.*, and cases cited.) The plaintiff had been under the care of this physician for two or three years. He described physical injuries which, from their very nature, were permanent. Dr. Jacobson, a surgeon of the city of Syracuse, testified that he had the plaintiff under his care for some months in a hospital at that city, and that an operation was performed, and he described the injuries, which, from their very nature, were necessarily permanent, and he expressed the opinion that the injuries were permanent. The trial occurred five years after the accident, and the effect of the injuries then existed, and there was no evidence offered by the defendant tending to contradict the testimony that the injuries existed at the time of the trial, or to show that they were magnified, or were not permanent in their character.

The accident occurred more than sixteen years ago, and eleven years have passed since the verdict under review was rendered, and the recollection of the witnesses, if all living, in respect to the facts involved, must have grown dim, and neither litigant can now intelligently present the transaction to a jury.

A party desiring to have a verdict reviewed as contrary to the weight of evidence, should not delay moving for eleven years, no sufficient cause for the *laches* having been shown, and hope to have the motion as favorably considered as though promptly made, as such motions should always be.

The order should be affirmed, with costs, and judgment ordered for the plaintiff on the verdict.

All concurred.

Order affirmed, with costs, and judgment directed for the plaintiff on the verdict, with costs.