fearless public officers when they are amerced in damages to vindicate a man who has openly confessed his crime by a plea of guilty. As was said by the court in Cuniff v. Beecher, 84 Hun, 137, 32 N. Y. Supp. 1067 (at page 140, 84 Hun, and page 1069, 32 N. Y. Supp.):

"The spectacle of a convicted defendant in a criminal case securing damages in a civil action because of his arrest upon the charge for which he had been criminally convicted would destroy all respect for the law, and would paralyze those provisions of our statutes authorizing private persons to arrest for crime, and authorizing peace officers to arrest without a warrant."

The judgment and order are reversed, and a new trial granted, with costs to the appellants to abide the event. All concur.

(42 App. Div. 597.)

BARKLEY v. NEW YORK CENT. & H. R. R. CO.

WILLIAMS et al. v. SAME et al.

(Supreme Court, Appellate Division, Fourth Department. July 18, 1899.)

1. ATTORNEY AND CLIENT—SUBSTITUTION OF ATTORNEYS—COMPENSATION.
Eleven years before an application for substitution of attorneys was made, applicant had obtained a verdict for damages against a railroad company. Defendant's attorneys moved to set aside the verdict, but this motion was not argued for five years. The motion was overruled, and defendant gave notice of appeal, but the appeal was not argued for six years longer. These delays were due to applicant's attorneys, who hindered matters, in fear, as they claimed, that judgment would be reversed, and hoping for a modification of the former decisions of the appellate court, or for a settlement. There was no ground for either excuse, as the defendant did not make any reasonable offer to settle, and the judgment was affirmed when finally appealed. The true cause of the delay was not made known to applicant, and he was deceived by false representations that the case was being diligently prosecuted. *Held*, that the application was properly granted without protection to the attorneys' rights to compensation under their contract with applicant.

2. COURTS—JURISDICTION OF SUPREME COURT.
Under Const. art. 6, § 2, providing that the appellate division of the supreme court shall have the jurisdiction formerly exercised by the general term, the appellate division has power in the first instance to pass on motions to confirm a referee's report, and to vacate an injunction.

3. SAME—MOTIONS.
Where a motion to confirm a referee's report has been heard before one justice, and a motion to vacate an injunction before another, both motions resting on the same question, the appellate division, on request by the parties and the justices, will rehear the motions in the first instance, in order that they may be determined together.

4. SAME—FINALITY OF RULINGS.
Rulings on a motion to confirm a referee's report ordering a substitution of attorneys, and a motion to vacate an injunction restraining the collection of a judgment until the attorneys are paid, are not conclusive, and may be reconsidered by leave of court on fresh motions.

5. ATTORNEY AND CLIENT—JURISDICTION.
The supreme court of New York has jurisdiction to determine on motion questions arising between attorney and client.

Action by Orville M. Barkley against the New York Central & Hudson River Railroad Company and action by Stephen K. Williams, Byron C. Williams, George Raines, and Thomas Raines against the New York Central & Hudson River Railroad Company and Orville

M. Barkley.   Motions by Orville M. Barkley to confirm a referee's report and dissolve an injunction.   Granted.

The opinion of Smith, J., referred to by the court, is as follows:

The plaintiff moved at special term that Frank C. Sargent, Esq., be substituted as his attorney in this action in the place of S. K. & B. C. Williams, Esqs., his original attorneys of record, by whom the action was commenced. The special term denied the motion, and on appeal by the plaintiff the appellate division reversed the order of the special term, and referred it to the undersigned to take evidence, and report the same to the special term, with his opinion as to the terms upon which a substitution of attorneys shall be ordered.   Under that order, the plaintiff in this action, his attorneys of record, and the attorneys proposed to be substituted have appeared before the undersign. '. and made their proofs and allegations; and the evidence so given, with the exhibits produced at the hearing, is reported herewith to the court. Although the order of the appellate division reverses the order of the special term which denied the plaintiff's motion for substitution, it does not order a substitution, but it directs a reference to take evidence, and report the same, with the opinion of the referee as to the terms upon which a substitution shall be ordered.   The scope of the matter referred for determination is understood, therefore, to be whether a substitution shall be ordered, and, if ordered, whether unconditionally, or upon terms, and, if upon terms, upon what terms.

It has been stated as a rule that: "Upon an application by a party for a substitution of another attorney of record, ordinarily the court will see that the attorney is protected as to his fees. Yet, where the attorney's conduct has been improper and neglectful, the court will deny this protection, and direct an unconditional substitution, leaving the attorney to his action for his fees."   Pierce v. Waters, 10 Wkly. Dig. 432; In re Prospect Avenue, 85 Hun, 257, 32 N. Y. Supp. 1013; Sheldon v. Mott, 91 Hun, 637, 35 N. Y. Supp. 1117. Applying the rule thus indicated to the present case, the conclusion seems unavoidable that the conduct of the plaintiff's attorneys has been improper and neglectful in unreasonably and unwarrantably delaying the prosecution of the action since the rendition of the verdict.   The verdict was rendered October 18, 1887.   On that day the defendant's counsel moved on the minutes to set aside the verdict and for a new trial upon exceptions, and also upon the ground that the verdict was contrary to the evidence and to law.   The motion was entertained by the trial judge, and submitted on the same day, but was not brought to argument until July, 1892.   The result of the argument was that the motion was denied, and an order to that effect was entered in August, 1892, which order gave the defendant sixty days to make and serve a case and exceptions for the purpose of an appeal.   In November, 1892, the defendant served notice of appeal, and after a while served a "case," to which the plaintiff's attorneys proposed amendments; but no step had been taken to procure a settlement of the "case" and exceptions as late as the 23d of June, 1898, when the plaintiff requested his attorneys to consent to the substitution of Mr. Sargent.   While this delay of nearly eleven years in proceeding to enforce the verdict was attributable in part to circumstances beyond the control of the plaintiff's attorneys, it was, in the main, the result of their deliberate purpose. This appears from the testimony of Mr. S. K. Williams and Mr. Raines.   The reasons assigned by them for adopting the policy of delay or inaction were, in substance:   First, that, fearing a reversal on appeal in the trend of what were then the reported decisions regarded as applicable to the questions involved in the case, it was thought good policy to delay, "in hopes that the court would qualify in other cases some of the former decisions"; and, secondly, that in time a favorable settlement might be effected with the defendant.   Neither ground was a reasonable excuse for the delay.   There was no reversible error in the trial, as the result in the appellate division shows.   Even if the plaintiff's attorneys had reason to suppose there was error, it was their duty to push the appeal to a conclusion, and, if adverse in its result, to bring on a new trial as soon as reasonably practicable.   The idea that an attorney may hang up his client's case indefinitely in the hope that the courts may reverse or modify in his favor their previous decisions has nothing to recommend it except its novelty.   As to the hope of a favorable settlement, it was utterly groundless.

The defendant's only offers of $500 and $1,500 were not regarded as worthy of consideration by the plaintiff's attorneys, and there had been no indication on the part of the defendant that it would offer more. · It does not appear that the adoption of the policy of delay, and the reasons for it, were made known to the plaintiff until a late day. During the period of delay he wrote time and again to his attorneys, asking about the conditions of his case. A brief reference to the replies sent him will show that until as late as October, 1896, he was not informed as to the true cause of the delay, but, on the contrary, was given to understand that his case was being prosecuted as diligently as possible. In this connection it is useful to refer to dates. April 18, 1888, the attorneys wrote to the plaintiff: "We are now preparing the case for argument, and we shall push as fast as we can." February 17, 1892, they wrote: "We are doing all we can in your case, and hope for favorable results." In the following November, Mr. B. C. Williams wrote: "Your letter of yesterday received. In reply I would say that we have argued one appeal in your case, and have succeeded in it, and sustained your judgment, and the R. R. Co. have again appealed, and I suppose it will be argued within six months." April 2, 1895, Mr. S. K. Williams wrote: "Your favor of 30th March is received, and I would say in reply that your case now will soon be argued, and we shall soon know something definite about it." July 11, 1896, Mr. S. K. Williams wrote: "I have forgotten whether I answered your last letter or not, but I would say that I am preparing to bring your case to a close, and shall endeavor to do so during the fall months. * * * I am sorry for the great delay that has occurred. Mr. Raines is of the opinion that we cannot sustain our case, and that the higher court will reverse it, and he has been very unwilling to move it along, and really he has been the cause principally of the delay. I am now determined to bring it to a close, and either get something or nothing." October 27, 1896, Mr. S. K. Williams wrote: "Your favor of the 26th is just received, and in reply I would say that I am preparing your case for argument in the appellate court, and I expect to argue it this fall. Mr. Raines has not as much confidence in succeeding in the appellate court as I have, and have had; and therefore he has been in favor of delaying the matter, expecting that we would have an offer on the other side to pay the judgment, or that we might have some new decisions of the court that would be in our favor. I think this delay has been in good faith." November 11, 1897, Mr. S. K. Williams wrote: "I expect to argue your case in court between the first day of January and the first day of April, and get a decision of it as to whether your recovery will be sustained or not. He has been long delayed. The delay, however, has been on account of the opinion of counsel, in which I have concurred, that it was very doubtful whether your recovery could be sustained; therefore we thought that the best course to take was to delay the case, thinking that we might have some new favorable decisions from the courts which would help us. This course seemed the wisest at the time, and I acquiesced in it." Next is a letter from the plaintiff to his attorneys, dated May 8, 1898, asking to be informed "of the latest accounts of the case," which does not appear to have been answered. On June 18, 1898, Mr. Mosher, an attorney of Syracuse, wrote in behalf of the plaintiff to his attorneys of record, asking for information respecting the state of the action, and on the same day the attorneys answered, saying, among other things: "There were some questions of law in it [the plaintiff's case], one of which was the incompetency of the engineer. There were some decisions on that subject. Mr. Raines thought we had not brought ourselves within those decisions, and he thought we had better delay in hopes that the court would qualify in other cases some of the former decisions, and he thought our policy was delay. These views and this policy he still adhered to, and we delayed. Judge Macomber died, and that postponed the settlement of the case. I think Mr. Raines now believes that the policy that our firm suggested—that is, to press the case right through at the time, as fast as we could—would have been better, as we have got no decisions more favorable to us since the trial. Plaintiff's attorneys have recently taken up the case again, and we have nearly agreed upon a settlement of the case, and shall go on and settle the case, and argue it. We were also in hopes that the defendant would settle it and pay us the judgment, or the principal part of it. Both he and ourselves have made suggestions to the attorneys for de-

fendant from time to time, but he says that he is sure to reverse the case, and has made us only very small propositions for settlement." Five days after the date of that letter the correspondence was ended by the request of the plaintiff that his attorneys consent to a substitution. That there was nothing beyond the control of the plaintiff's attorneys to prevent a settlement of the case appears from the fact that the case was procured to be settled in less than a month after the request for substitution was made. If the original attorneys had refused to go on with the action, the court, upon a proper application, would have ordered a substitution. In re H——, 93 N. Y. 381; Tuck v. Manning, 53 Hun, 455, 6 N. Y. Supp. 140; Halbert v. Gibbs, 16 App. Div. 126, 45 N. Y. Supp. 113. Hardly less hurtful to his client is the conduct of an attorney who, although avowing from time to time a willingness and intention to go on, in fact purposely delays the action year after year, until requested by his client to consent to a change of attorneys.

It is argued that the plaintiff was not injured by the delay, as the verdict was drawing interest at the rate of 6 per cent. The argument assumes that, if the plaintiff had received the amount of the verdict seasonably, he could not have used it to any greater profit than by lending it at the legal rate of interest. The assumption is unwarranted. The plaintiff was injured shortly before reaching his majority, and the many years of delay occurred in his early manhood, when the possession of a few thousand dollars might have offered to him a permanent and profitable business. But, aside from speculative considerations, he was, in fact, poor and needy, and forced to ask for loans of money. He had been crippled by his injuries, and was unfit for any employment requiring hard labor. Manifestly, during the many years of waiting consequent upon the delay of his attorneys, he suffered for the lack of money. Furthermore, by their delay he was subjected to the expense of employing another attorney, and of procuring his substitution. Injury is presumed where a substantial right of a client is violated. People v. Common Council of City of Auburn, 85 Hun, 601, 613, 33 N. Y. Supp. 165. These views lead to the conclusion that the delay of the plaintiff's attorneys in prosecuting the action was improper and neglectful within the rule above referred to. This conclusion is reached without considering the conflicting testimony respecting the interviews at the office of the plaintiff's attorneys in June and August, 1898. Those occurrences were subsequent to the decision of the plaintiff to change his attorneys, and their importance consists principally in this: that, if the conduct of the plaintiff's senior attorney on those occasions was as testified to by the plaintiff and the witness Michaels, it would serve to aggravate the previous misconduct of the plaintiff's attorneys in delaying the action, and perhaps tend to attach to it an improper motive.

There is no issue here as to the propriety of substituting Mr. Sargent. If a case for substitution is made out, the plaintiff has the right to employ such new attorney as he pleases, and on such terms as he thinks proper.

If the views above expressed are correct, it follows that the plaintiff's attorneys, by their misconduct and neglect, have forfeited their right to the compensation specified in the contract with the plaintiff, which they have put in evidence. They owe their client a reasonable degree of diligence, as well as of skill in the conduct of his case. Having failed in their duty in that respect, they are left to their action for their fees and expenses. The question as to what amount of compensation is due to the counsel employed by them is also left to be determined by action.

The conclusion is that the motion for a substitution of attorneys should be granted, but upon the following terms, viz.: (1) The sum of three hundred and thirty dollars ($330.00), which was agreed by the plaintiff to be paid out of the judgment, when collected, to Dr. Jacobson, for his services as a surgeon, should be paid by the plaintiff. (2) The plaintiff should deposit two thousand dollars ($2,000.00) in court to the credit of the cause, or file a bond in that sum, with two sufficient sureties, to be approved by a justice of the court, conditioned for the payment of all costs and fees in the action which shall be found due to his original attorneys of record, and for services of counsel employed by them at such sum as shall be adjudged a reasonable compensation therefor.

MEM. Since the hearing was closed, and the case was submitted, a request for findings has been received from the plaintiff's attorneys of record, but, as

the order of reference does not require or authorize findings, the request is not acted upon. The request is sent to the court with the exhibits.

Argued before HARDIN, P. J., and·FOLLETT, ADAMS, McLEN-NAN, and SPRING, JJ.

Frank C. Sargent, for Orville M. Barkley.

Thomas Raines, for Stephen K. Williams, Byron C. Williams, George Raines, and Thomas Raines.

FOLLETT, J. September 18, 1882, Orville M. Barkley, the plaintiff in action No. 1, was severely injured by the defendant in that action. April 27, 1885, the plaintiff executed and delivered to S. K. & B. C. Williams, a firm of attorneys engaged in business at Newark, N. Y., a contract of which the following is a copy:

"In consideration of S. K. & B. C. Williams, of Newark, N. Y., undertaking and having agreed to commence and prosecute a suit (or suits, in their discretion) against the New York Central and Hudson River Railroad Company for me, and in my name, as my attorneys and counsel, to recover of said company damages for injuries committed upon me and to me by said railroad company, or its employé or employés, at or near Fairport, Monroe county, on or about September 18th, 1882, by an engine of said company striking and permanently injuring me on that day and at that place, and for loss of service and labor by means thereof, and for expenses and charges of physicians and surgeons in my sickness, I, Orville M. Barkley, of Palmyra, N. Y., do hereby agree to give and pay to them an equal third part of all damages or moneys received or recovered for said injuries and causes of action in said suit or suits in lieu and place of all other pay or compensation for their or either of their services as such, my attorneys and counsel, in said suit or suits. They are to receive nothing for their said services from me unless a recovery is had of said company, and then only said one-third of same. They are also to have any taxable costs recovered against said railroad company. Said suit or suits is or are to be brought in the supreme court, and said S. K. & B. C. Williams, or either one of them, is to appear as my attorney therein. Said suit or suits or the said causes of action are not to be compromised or settled without the consent and concurrence of both me, said Barkley, and said attorneys and counsel, and upon any settlement or compromise thereof my said attorneys and counsel are to receive the same proportion of any moneys paid in said settlement or compromise as above stated.

"Witness my hand and seal this 27th day of April, 1885.

"Orville M. Barkley. [L. S.]"

September 3, 1885, action No. 1 was begun by S. K. & B. C. Williams as attorneys for the plaintiff. May 18, 1886, the plaintiff executed and delivered to S. K. & B. C. Williams, his said attorneys, a second contract, of which the following is a copy:

"Whereas, S. K. & B. C. Williams are carrying on my case against the New York Central and Hudson River Railroad Company for injuries received by me by being struck and injured by an engine of said company at Fairport, N. Y., on or about Sept. 18, 1882; and whereas, my said attorneys propose to employ other counsel to help try the case, and it is proposed by them, and agreed to by me, that I employ Hon. George Raines, of Rochester, for that purpose, to be assisted, if necessary, in the preparation of the case, by his brother, at Rochester: Now, therefore, I do hereby agree to pay and deliver to said S. K. & B. C. Williams, one-half of all the sums and money received from said company or paid by it for said injuries, for their services in said action, in place of all other compensation, and also to pay said Raines and brother for his and their services therein, in place of any other pay to them; and said S. K. & B. C. Williams are to agree with said Raines and brother to compensate and pay them from said one-half for their services. In case

said Raines and brother are not engaged in said case, as above stated, this agreement to be void, and resort had to the former agreement with S. K. & B. C. Williams as to compensation. If this agreement takes effect by the employment of said Raines, or him and his brother, the said former agreement to be of no effect. Nothing herein shall interfere with the rights of said S. K. & B. C. Williams to their costs recovered of said company, but they are entitled to all costs so recovered. In case of a compromise or settlement of said claim, the amount recovered is to be divided in the same way hereinabove mentioned, —one-half to me, and one-half to said S. K. & B. C. Williams and said counsel.

"Witness my hand and seal this 18th day of May, 1886.

"Orville M. Barkley.  [L. S.]"

The action was tried at the October, 1887, Monroe circuit, before Mr. Justice Macomber and a jury, and on the 18th of that month a verdict for $7,000 damages was rendered. The record shows that George Raines and S. K. & B. C. Williams tried the case for the plaintiff. Fourteen days after the rendition of the verdict,—October 31, 1887,—S. K. & B. C. Williams and Raines Bros. entered into a contract, of which the following is a copy:

"Supreme Court.

"Orville M. Barkley v. The New York Central & Hudson River Railroad Company.

"Whereas, on the 18th day of May, 1886, the said Orville M. Barkley agreed to pay to S. K. & B. C. Williams the equal one-half of all sums and money recovered from said company in this action, or paid by it, for damages therein, for services, etc., in said action, in lieu of all other compensation therein, as by the agreement of said Barkley, dated on said day, will more fully appear, with its considerations and conditions: Now, therefore, said S. K. & B. C. Williams agree to pay to Raines Brothers, of Rochester (George Raines and Thomas Raines), the one-half of what they are to receive by said agreement of the damages in said action, when received by them, in consideration of the services of said George Raines and Thomas Raines rendered and to be rendered in said action. Said Raines Brothers agree to render their services, and assist in retrying said case if a new trial is granted therein, and as often as a new trial is had therein. If desired by said S. K. & B. C. Williams, said George and Thomas Raines agree to argue the motion for a new trial before Judge Macomber, and prepare brief therefor; and also, if so desired, agree to argue the case in the general term and court of appeals, and prepare briefs therefor; although it is now contemplated that S. K. & B. C. Williams shall take care of and argue the case in the general term and in the court of appeals, which they are to do, unless they request the said Raines Brothers to argue it in either court when the latter agree to do so. In consideration of the foregoing it is agreed that the said George and Thomas Raines shall at all times assist and render their services as counsel in the case at all stages thereof, when requested by said S. K. & B. C. Williams. It is, however, understood and agreed that any sums of money paid out in said case, or in necessary expenses incident thereto, or in preparing for trial, that are not taxable items, or are not reimbursed to said S. K. & B. C. Williams by payment to them as costs, shall be first deducted from whatever amount is received from said Barkley before the same shall be divided between said S. K. & B. C. Williams and said Raines Brothers. Any necessary traveling expenses in said action of said George and Thomas Raines or of said S. K. & B. C. Williams shall be deducted from said half, and paid to the person who has incurred them, before division. Should a compromise and settlement occur, the fund aforesaid, or the amount received by said S. K. & B. C. Williams, shall be paid and divided as above stated.

"Dated October 31, 1887.                    S. K. & B. C. Williams.
                                            "Raines Bros."

The court consented to entertain a motion made by the defendant for a new trial on the minutes, which, however, was not argued

until July, 1892, four years and nine months after the rendition of the verdict. August 8, 1892, an order was entered denying defendant's motion, and granting it 60 days in which to serve a proposed "case" containing exceptions. November 21, 1892, the defendant appealed from the order denying its motion for a new trial, and July 12, 1898 (nearly 11 years after the rendition of the verdict), the "case" containing exceptions was settled, and filed in the office of the clerk of the county of Monroe. Between October, 1887, and July, 1898, much correspondence passed between the plaintiff and his attorneys of record, in which the plaintiff expressed his dissatisfaction with the delay, and with the manner in which his attorneys were conducting the case. The "case" containing exceptions not having been settled or advanced in any way, the plaintiff, on June 23, 1898, personally served on his attorneys of record a demand that Frank C. Sargent, an attorney of Syracuse, be substituted as the attorney for the plaintiff in that action in the place of S. K. & B. C. Williams, which being refused the plaintiff, June 27, 1898, through his attorney Frank C. Sargent, served notice that he would move July 9, 1898, at a special term held at Rochester, N. Y., for an order substituting said Frank C. Sargent in the place of S. K. & B. C. Williams as the attorney for the plaintiff. July 9, 1898, Frank C. Sargent, for the plaintiff, and S. K. & B. C. Williams, for themselves, appeared at said special term, and upon the application of S. K. & B. C. Williams, Frank C. Sargent opposing, the hearing of the motion was postponed until July 30, 1898. After the adjournment of the motion, and on July 12, 1898, the proposed "case" in Barkley against the New York Central & Hudson River Railroad Company was settled and filed. Afterwards it was agreed that the motion be heard July 27, 1898, on which day it was heard, and an order entered adjudging:

"It is hereby ordered that the motion to substitute Frank C. Sargent as attorney in this action in place of S. K. & B. C. Williams is denied, without costs. It is further ordered that Frank C. Sargent be permitted to file a supplemental brief, and to assist in the argument for the plaintiff in the appellate division upon the argument of this case, providing said court will consent thereto. It is further ordered that the plaintiff's attorneys shall notice said cause for argument at the next term of the appellate court, appointed to be held September 20, 1898."

From this order the plaintiff appealed to this court, where the appeal was heard in September, 1898, and December 9, 1898, the following order was granted:

"Order reversed, with ten dollars costs and disbursements to the appellant, payable by the respondents. It is further ordered that it be referred to Hon. James C. Smith to take evidence, and report the same to the special term, with his opinion as to the terms upon which a substitution of attorneys shall be ordered; and either party is at liberty to bring on the hearing before the referee upon eight days' notice." 35 App. Div. 167, 54 N. Y. Supp. 970.

At the same term the appeal from the order denying defendant's motion for a new trial on the minutes was argued, and December 9, 1898, it was affirmed, all the justices concurring, and a judgment was directed for the plaintiff on the verdict, with costs. 35 App. Div. 228, 54 N. Y. Supp. 766. December 15, 1898, a judgment was en-

tered on this decision for $11,686.50 damages and for $379.13 costs; total, $12,065.63 damages and costs. Afterwards the defendant moved for a reargument of the case, and, in case a reargument was denied, for leave to appeal to the court of appeals, which motion was denied by a decision filed February 3, 1899 (37 App. Div. 632, 56 N. Y. Supp. 1104), and thus the judgment became a final one.    January 10, 1899, the parties, with their counsel, appeared before the referee appointed by this court on the motion to remove S. K. & B. C. Williams as attorneys for the plaintiff and substitute in their stead Frank C. Sargent, and began to take evidence on the issues referred. Several hearings were had, and a large amount of evidence, oral and documentary, taken. The plaintiff, his counsel, Frank C. Sargent, Stephen K. Williams, Byron C. Williams, and Thomas Raines were examined and cross-examined at great length in regard to the conduct of the case; the two contracts between the plaintiff and S. K. & B. C. Williams, together with the contract between S. K. & B. C. Williams and Raines Bros., were read in evidence, and every fact which the ingenuity of learned counsel could suggest as bearing upon the alleged misconduct of the attorneys of record and counsel in the management of this case, and every reason and excuse for their conduct, seem to have been fully developed before the learned referee, who, on March 30, 1899, filed his report in the office of the clerk of the county of Monroe, in which he reached the following conclusions:

"The conclusion is that the motion for a substitution of attorneys should be granted, but upon the following terms, viz.: (1) The sum of three hundred and thirty dollars ($330.00), which was agreed by the plaintiff to be paid out of the judgment, when collected, to Dr. Jacobson, for his services as a surgeon, should be paid by the plaintiff. (2) The plaintiff should deposit two thousand dollars ($2,000.00) in court to the credit of the cause, or file a bond in that sum, with two sufficient sureties to be approved by a justice of the court, conditioned for the payment of all costs and fees in the action which shall be found due to his original attorneys of record, and for services of counsel employed by them at such sum as shall be adjudged a reasonable compensation therefor."

These conclusions are preceded by an exhaustive opinion discussing the questions of fact and law involved in the motion, which justify the conclusions, in which opinion, hereto annexed (a certified copy of Judge Smith's opinion is in the papers, but it is printed on pages 26 to 35, inclusive, of Sargent's brief), this court concurs, and upon which the referee's conclusions are affirmed. It should be stated, in explanation of how the motion to confirm the report came on before this court instead of the special term, that on the 23d of May, 1899, the attorneys for the litigants stipulated that the order of the appellate · division appointing a referee be amended so as to provide that the application for the confirmation of the referee's report should be heard by the appellate division instead of at special term, upon which stipulation an order was entered by this court so amending the original order of reference.    April 5, 1899,—six days after the filing of the referee's report,—Stephen K. Williams verified the complaint in action No. 2, which contains substantially a statement of the facts hereinbefore recited, and demands a judgment that the three contracts hereinbefore set forth be adjudged valid, and that Orville M. Barkley be compelled to perform them specifically, and

that he, his agents and attorneys, be enjoined from receiving more than half of the damages and from receiving any of the costs recovered by said judgment, and that the defendant, the New York Central & Hudson River Railroad Company, be restrained from paying to Orville M. Barkley any part of the costs entered in said judgment, and from paying more than half of the damages recovered by said judgment to Orville M. Barkley, his agent or attorney. . In effect, by the complaint in actoin No. 2 the plaintiff seeks to review the proceedings then pending for the determination of the rights of Orville M. Barkley and his attorneys and counsel, and to annul the referee's report. April 7, 1899, upon said complaint, and an affidavit of Stephen K. Williams, verified April 5, 1899, an injunction order was granted restraining the defendants in action No. 2 as demanded in the complaint, and immediately thereafter,—the date not appearing,—the summons, complaint, affidavit, and injunction order were served on the defendants. Orville M. Barkley moves to vacate the injunction, and by the agreement of counsel the motion is heard in the first instance by this court.

This court has jurisdiction, if willing to exercise it, to hear and determine in the first instance any motion, contested or ex parte, that a special term may determine. The late general term had appellate jurisdiction, and also the same original jurisdiction to hear and determine motions, ex parte or contested, that the special term had, unless otherwise provided by statute. Drake v. Railroad Co., 2 Code Rep. 67; Mason v. Jones, 1 Code Rep. (N. S.) 335; Anonymous v. Anonymous, 10 How. Prac. 353; Tracy v. Talmadge, 1 Abb. Prac. 460; In re Opening Seventh Avenue, 29 How. Prac. 180; Gracie v. Freeland, 1 N. Y. 228; Syracuse Sav. Bank v. Syracuse, C. & N. Y. R. Co., 88 N. Y. 110; Mandeville v. Marvin, 30 Hun, 282, 287; 1 Whitt. Prac. (4th Ed.) 38; 1 Tiff. & S. Prac. 21; 1 Wait, Law & Prac. 317; 1 Rum. Prac. 40. "From and after the last day of December, one thousand eight hundred and ninety-five, the appellate division shall have the jurisdiction now exercised by the supreme court at its general terms." Const. art. 6, § 2. Legislative acts or rules of court, if any, which attempt to deprive the appellate division of the jurisdiction formerly possessed by the general term, and secured to the appellate division by the constitutional provision above quoted, are violative of said provision, and are void. People v. Nichols, 79 N. Y. 582. Although the appellate divisions have jurisdiction to hear motions in the first instance, they are not required to, and will not, except in cases where some exigency seems to require that they shall do so in the interest of justice. The motion to confirm the referee's report had been heard at a special term held by one justice, and the motion to vacate the injunction at a special term held by another justice, and it was desired by said justices and counsel that both motions be heard before the same court. This court having reached the conclusion that the report of the referee should be confirmed, in which it is found that the plaintiffs in action No. 2 have lost all right by their misconduct and delay to have either of the contracts specifically enforced, and that the plaintiffs have lost their lien upon the judgment, it follows that an injunction in action No. 2

should not be sustained restraining the New York Central & Hudson River Railroad Company from paying and Orville M. Barkley from receiving the amount of the judgment.

Again, in case a controversy arises involving questions of law and fact, or both, which the supreme court has jurisdiction to hear and determine upon a motion or in a special proceeding, as well as in an action, and the matter is determined upon the merits, upon a motion or special proceeding, after hearing all the contestants, and an order is entered which may be reviewed on appeal, such an order is as final and conclusive on the litigants and their privies as though the same question had been determined in an action. Supervisors v. Briggs, 2 Denio, 26, 33; Dwight v. St. John, 25 N. Y. 203; Demarest v. Daig, 11 Abb. Prac. 9, affirmed 32 N. Y. 281; In re Petition of Livingston, 34 N. Y. 555, 557; Brown v. Mayor, etc., 66 N. Y. 385, 390; Smith v. Zalinski, 94 N. Y. 519; Leavitt v. Wolcott, 95 N. Y. 212, 222; Culross v. Gibbons, 130 N. Y. 447, 29 N. E. 839; In re Davis, 7 Daly, 1; In re Roberts, 10 Hun, 253; Aldridge v. Walker, 73 Hun, 281, 26 N. Y. Supp. 296; New York & N. J. Tel. Co. v. Metropolitan Telephone & Telegraph Co., 81 Hun, 453, 31 N. Y. Supp. 213; Freem. Judgm. (4th Ed.) § 325. The rule just stated does not apply to interlocutory orders made during the progress of an action involving some matter or question incidentally arising, and not involving the merits of the controversy. The distinction between conclusive and non-conclusive judicial determinations made on motions and evidenced by orders is pointed out in New York & N. J. Tel. Co. v. Metropolitan Telephone & Telegraph Co., supra. Decisions made on motions to vacate injunctions, attachments, and orders of arrest, though in some respects involving the merits, are not conclusive, and the same question may be reconsidered by leave of the court on fresh motions. Neither are such orders conclusive on the tribunal which ultimately determines the law and fact by a decision or verdict upon which a judgment is entered. When a motion is made in an action to set aside a judgment, for example, for fraud, and there is a sharp question of fact involved, the special term may, and often does, refuse to determine the question upon motion, and requires the complaining party to bring an action. Beards v. Wheeler, 76 N. Y. 213. In the case at bar neither party asked that the validity of the contracts, or the terms upon which Orville M. Barkley might have a new attorney substituted, be determined in an action, but both entered on the reference without objection. The supreme court has jurisdiction to determine controversies arising out of the professional relations of attorneys and clients, and upon what terms attorneys shall be changed in pending actions, either upon motion or in a summary special proceeding. Starr v. Vanderheyden, 9 Johns. 253; Merritt v. Lambert, 10 Paige, 352, affirmed (sub nom.) Wallis v. Loubat, 2 Denio, 607; Barry v. Whitney, 3 Sandf. 696; Bank v. Todd, 52 N. Y. 489; In re Fincke, 6 Daly, 111; Hess v. Joseph, 7 Rob. (N. Y.) 609; Doyle v. Mayor, etc., 26 Misc. Rep. 61, 56 N. Y. Supp. 441; rule 10 of general rules of practice, and cases cited; 1 Am. & Eng. Enc. Law (2d Ed.) 411 et seq., and cases cited. In Hess v. Joseph and in Doyle v. Mayor, supra, it was held that an application for the re-

moval of an attorney and the substitution of another in a pending action is not a proceeding in the action, and should not be entitled therein, but is a summary special proceeding, which seems to be the better practice. The adverse party in the action in which a substitution is sought has no interest in the question, is not entitled to notice, and the application involves no question in the action, and is in no sense a proceeding in the action, but is a special proceeding. Code Civ. Proc. §§ 3333, 3334. For a discussion of the procedure to compel attorneys to discharge their duties to their clients, see chapter 38 of the second edition of Fiero's Special Proceedings.

The court having jurisdiction to determine, upon motion or upon a special proceeding, the rights of these litigants, and it having been held that the attorneys and their privies have lost all lien upon and claim to any part of the judgment by virtue of their contracts above set forth, the injunction granted in an action brought to review that determination cannot be sustained, and it is vacated, with $10 costs and disbursements. All concur, except ADAMS, J., not voting.