STEPHEN K. WILLIAMS et al., Appellants, *v.* ORVILLE M. BARKLEY, Respondent, Impleaded with Another.

1. DECISION ON MOTION — CONCLUSIVE AS TO MATTERS LITIGATED. A decision made on a motion after an investigation through witnesses examined and cross-examined is conclusive as to controversies between the parties and their privies which the record shows must have been decided in order to reach the decision in question.

2. ATTORNEY AND CLIENT — ORDER SUBSTITUTING ATTORNEYS — EFFECT AS A FORMER ADJUDICATION OF RIGHT OF ATTORNEYS OF RECORD TO CONTINGENT FEE. The right asserted by attorneys of record to a fund representing the portion of a recovery by their client which, by his

agreement, was to be paid to them by way of compensation, and which was paid into court to preserve their rights pending an appeal from an order of substitution of attorneys, is conclusively determined against them by an order of the Appellate Division which confirms and adopts as its own the report of a referee appointed to take evidence and report the same with his opinion as to the terms upon which a substitution of attorneys should be ordered; the contract relative to compensation having been put in evidence before the referee, and the question of the attorneys' negligence litigated, with the result that the referee found that they had been guilty of inexcusable delay in the prosecution of the action brought in behalf of the client; that they had forfeited their right to the compensation specified in the contract; and that they should be left to their remedy by action for their fees; his final conclusion being " that the motion for substitution of attorneys should be granted upon " two conditions, one of which was that the client should deposit a specified sum in court or file a bond for that sum, conditioned for the payment of all costs and fees in the action which should be found due to the original attorneys of record and for services of counsel employed by them at such sum as should be adjudged reasonable compensation therefor.

3. Conclusiveness against the Right of Counsel in Fund. The order of confirmation is also conclusive against counsel's right to or lien on the fund, if they were privies of the attorneys and relied upon a contract made with them personally, although the counsel were not parties to the proceeding and there is no claim or adjudication that they were guilty of negligence or of other improper conduct.

4. Construction of Contract with Attorneys of Record — When Counsel Chargeable with their Negligence. The counsel are privies of the attorneys, and, therefore, bound by the adjudication, where their employment was in pursuance of a contract between the client and the attorneys of record, which contained a recital indicating that the client was to employ the counsel, but the actual agreement of which was that the client should pay the attorneys of record one-half, instead of one-third of the recovery, as previously agreed, for their services, as well as for the services of the counsel, and that the attorneys of record should employ the counsel and pay them " from said one-half for their services," the amount not being specified, in accordance with which contract the attorneys of record entered into an agreement with the counsel to pay the latter one-half of what the former, as attorneys of record, were to receive by their agreement with their client.

5. Contract — Variance between Recital and Promise. Where the recital in an agreement is so inconsistent with the covenant or promise that they cannot be harmonized, the latter, if unambiguous, must prevail, because it is the most important.

*Williams* v. *Barkley*, 52 App. Div. 631, affirmed.

(Argued October 15, 1900; decided November 27, 1900.)

7

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered July 6, 1900, reversing an order made at Special Term which denied a motion made by the respondent for an order requiring the payment to him of money deposited in court, and granting said motion upon certain conditions.

The facts, so far as material, and the question certified are stated in the opinion.

*George Raines* and *Stephen K. Williams* for appellants. The adjudication upon the motion to confirm the report of the referee does not determine the rights or liens of the plaintiffs, George Raines and Thomas Raines, to or upon the fund in question, and is not binding upon them on this motion. (*Masten* v. *Olcott*, 101 N. Y. 160; 1 Greenl. on Ev. § 189; Bigelow on Estop. [5th ed.] 142, 347; *Boughton* v. *Harder*, 46 App. Div. 355; *Nelson* v. *City of Troy*, 29 Hun, 173; *Campbell* v. *Hall*, 16 N. Y. 575; *Zoeller* v. *Riley*, 100 N. Y. 102; *Johnson* v. *U. S. Co.*, 37 N. Y. S. R. 878; *Matter of Haskins*, 18 Hun, 42; *Brown* v. *Mayor*, etc., 9 Hun, 588; *People ex rel.* v. *Lord*, 157 N. Y. 408.) The former adjudication upon the motion to confirm the report of the referee and upon the order vacating the injunction does not determine the rights to, or liens upon, the fund in question, of the attorneys, the Williams, and is not binding upon them on this motion, in this action. (*Bomeisler* v. *Forster*, 10 App. Div. 43; *Banks* v. *A. T. Society*, 4 Sandf. Ch. 438; *Matter of Barkley*, 42 App. Div. 610; *Bell* v. *Merrifield*, 109 N. Y. 202; *Springer* v. *Bun*, 128 N. Y. 99; *Lance* v. *Shaughnessy*, 86 Hun, 411; *Randall* v. *N. Y. E. R. R. Co.*, 149 N. Y. 211; *Stannard* v. *Hubbell*, 34 N. Y. S. R. 413; *Campbell* v. *Consalus*, 25 N. Y. 613; *W. C. Co.* v. *Hathaway*, 8 Wend. 480.)

*Frank C. Sargent* for respondent. The adjudications of the court below are binding upon all of the plaintiffs in this action. (*Supervisors of Onondaga* v. *Briggs*, 2 Den. 26; *Dwight* v.

*St. John,* 25 N. Y. 203; *Demarest* v. *Darg,* 11 Abb. Pr. 9;
32 N. Y. 281; *Matter of Livingston,* 34 N. Y. 555; *Brown* v.
*Mayor, etc.,* 66 N. Y. 385; *Smith* v. *Zalinski,* 94 N. Y. 519;
*Leavitt* v. *Wolcott,* 95 N. Y. 212; *Culross* v. *Gibbons,* 130
N. Y. 447; *Matter of Davis,* 7 Daly, 1; *Matter of Roberts,*
10 Hun, 253.) No court will extend its protecting arm to
an attorney, whose conduct, in the management of a case, has
been improper and neglectful. (*Matter of Lexington Avenue,*
30 App. Div. 602; *Barkley* v. *N. Y. C. & H. R. R. R. Co.,*
35 App. Div. 169.)

VANN, J. The facts in this protracted controversy between
attorneys and client have been stated so often that it is
unnecessary to again repeat them. (*Barkley* v. *N. Y. C. &
H. R. R. R. Co.,* 35 App. Div. 167; *Matter of Barkley,* 42
App. Div. 597; 161 N. Y. 647; *Williams* v. *Barkley,* 52
App. Div. 631.)

The question we are now called upon to determine was cer-
tified to us by the court below in the following form, viz.:
" Does the former adjudication of this court, upon the motion
to confirm the report of the referee in the case of *Barkley* v.
*New York Central & Hudson River Railroad Company*
and upon the order of this court vacating an injunction in
this action (see 42 App. Div. 597) determine the rights to or
liens of the parties upon the fund in question, and if so, is
it binding upon the plaintiffs, or either of them, in this
action ? "

The appeal underlying said question is from an order of the
Appellate Division reversing an order of the Special Term,
which denied a motion made by Mr. Barkley, the respondent,
to require the county treasurer of Monroe county to pay him
the sum of $6,240.08, deposited pursuant to an order direct-
ing the railroad company, as judgment debtor of Barkley, to
pay him one-half of his judgment, and to pay the other half
into court by depositing it with the county treasurer. The
object of the court in requiring such deposit, was to preserve
all possible rights pending an appeal to this court from the

order of substitution hereinafter mentioned, brought by Stephen K. and Byron C. Williams, who were the original attorneys for Barkley, and claimed to own a part of the judgment by virtue of a contract with him. When said appeal was dismissed the motion was made to pay over the amount so deposited. The order now appealed from not only reversed the order of the Special Term denying said motion, but granted the motion upon condition that Mr. Barkley should "either deposit the sum of $2,000, or file a bond in that amount," in accordance with a previous order of the court. (*Matter of Barkley*, 42 App. Div. 597.) It appears from the record that said condition had been complied with before the motion now before us was made.

The "former adjudication," referred to in the question certified, was through an order of the Appellate Division substituting Frank C. Sargent, Esq., as attorney for Mr. Barkley in the action brought by him against the railroad company, in the place of the Messrs. Williams, who were removed. That order confirmed the report of a referee appointed "to take evidence and report the same to the Special Term with his opinion as to the terms upon which a substitution of attorneys" should "be ordered."

The referee, after hearing the parties, made his report wherein he laid down the rule that "upon an application by a party for a substitution of another attorney of record, ordinarily the court will see that the attorney is protected as to his fees; yet where the attorney's conduct has been improper and neglectful, the court will deny this protection and direct an unconditional substitution, leaving the attorney to his action for his fees." He found that "the conduct of the plaintiff's attorneys has been improper and neglectful, in unreasonably and unwarrantably delaying the prosecution of this action since the rendition of the verdict. * * * While this delay of nearly eleven years in proceeding to enforce the verdict was attributable in part to circumstances beyond the control of the plaintiff's attorneys, it was in the main the result of their deliberate purpose," and was without "reasonable excuse."

After quoting from the evidence and discussing the law the referee continued : " These views lead to the conclusion that the delay of the plaintiff's attorneys in prosecuting the action was improper and neglectful within the rule above referred to. * * * There is no issue here as to the propriety of substituting Mr. Sargent. If a case for substitution is made out, the plaintiff has the right to employ such new attorney as he pleases and on such terms as he thinks proper. If the views above expressed are correct, it follows that the plaintiff's attorneys by their misconduct and neglect have forfeited their right to the compensation specified in the contract with the plaintiff, which they have put in evidence. They owe their client a reasonable degree of diligence as well as of skill in the conduct of his case. Having failed in their duty in that respect, they are left to their action for their fees and expenses. The question as to what amount of compensation is due to the counsel employed by them is also left to be determined by action." His final conclusion was " that the motion for a substitution of attorneys should be granted upon " two conditions, the first of which is not now important, while the second is as follows : " The plaintiff should deposit $2,000 in court to the credit of the cause, or file a bond in that sum with two sufficient sureties to be approved by a justice of the court, conditioned for the payment of all costs and fees in the action which shall be found due to his original attorneys of record and for services of counsel employed by them at such sum as shall be adjudged reasonable compensation therefor." The requirement of a bond or deposit was not intended to limit the recovery by action to the sum named, but to furnish some measure of security for what might be recovered, in response to the allegation that Barkley was insolvent. The Appellate Division confirmed the report of the referee, which it in terms adopted as its own opinion, and an order was entered accordingly.

Shortly after the referee made his report, the Messrs. Williams, the attorneys of record, and George and Thomas Raines, known as the Raines Brothers, who acted as counsel in the trial of the action against the railroad company, commenced

this action against Mr. Barkley to require certain contracts relating to their compensation as attorneys and counsel, one entered into between the Messrs. Williams and Barkley and the other between the Messrs. Williams and the Raines Brothers, to be specifically performed and to restrain the railroad company from paying and Mr. Barkley from receiving the one-half of the judgment which the plaintiffs alleged that they owned by virtue of said contracts. A temporary injunction, granted accordingly, was set aside by the Appellate Division at the same time that the order was made confirming the report of the referee and directing a substitution of attorneys, upon the following ground as stated in the opinion : " This court having reached the conclusion that the report of the referee should be confirmed, in which it is found that the plaintiffs  *   *   *  have lost all right by their misconduct and delay to have either of the contracts specifically enforced and that the plaintiffs have lost their lien upon the judgment, it follows that the injunction  *   *   *  should not be sustained restraining the New York Central & Hudson River Railroad Company from paying and Orville M. Barkley from receiving the amount of the judgment."

A former adjudication is binding upon parties and their privies and prevents them from litigating over again such matters as were previously at issue between them and were finally decided by a competent court. If the record of the former proceeding, although made upon a motion, but after an investigation through witnesses examined and cross-examined, shows that the decision could not have been made without deciding the particular matter now in controversy, the latter must be regarded as settled by the previous action of the court, for to litigate the fact anew would impeach the first decision. (*Dwight* v. *St. John*, 25 N. Y. 203 ; *Demarest* v. *Darg*, 32 N. Y. 281 ; *Brown* v. *Mayor, etc.*, 66 N. Y. 385 ; *Smith* v. *Zalinski*, 94 N. Y. 519 ; *Culross* v. *Gibbons*, 130 N. Y. 447 ; Wells Res Adjudicata, § 2 ; Freeman on Judgments, § 325.) This is especially true when the controversy involves the conduct of an attorney, as such, because as an offi-

cer of the court he is subject to its general authority and control. (*Hamilton* v. *Wright*, 37 N. Y. 502.)

The proceeding, now asserted as a bar, was for a substitution of attorneys, and the order of reference was to take evidence and fix the terms upon which a substitution might be had. . The contracts between the parties relative to compensation were put in evidence, and the question of the attorney's negligence was litigated at length with the result stated. The Supreme Court could have made the order of substitution subject to the claim of the Messrs. Williams upon the verdict, in accordance with their contract, but it did not do so. On the contrary, it directed a substitution substantially without terms, upon the ground that the Messrs. Williams had, by their negligence, forfeited the right to enforce their contract. (*Holmes* v. *Evans*, 129 N. Y. 140.) It adjudged that they had been negligent in prosecuting the action against the railroad company and that by reason of such negligence they had forfeited their right to compensation according to their contract, and were left to recover such compensation by action as they could establish upon a *quantum meruit.* It was not adjudged that they were entitled to no compensation whatever, but that on account of their negligence they could not enforce their contract, which fixed the amount and gave a lien therefor. At the same time it was also adjudged that they were entitled to such amount as, in a proper action, they could prove their services were reasonably worth.

Whether they had been negligent or not was an issue that was necessarily determined in order to decide as to the terms upon which the order of substitution should be made. That subject and its consequences were directly involved in the controversy. If the contract had been performed by the attorneys no valid order of substitution could have been made without recognizing it. If it had been found that they were not guilty of negligence the court would have had no power to remove them without preserving their rights under it. It was only because they were found guilty of inexcusable neglect that the court ordered a substitution virtually without

terms, upon the ground that the contract could not be enforced. The question of negligence was the main, if not the only question tried and decided. It was necessary to determine that they were negligent, or else the order of substitution doing away with the contract could not have been made. It was adjudicated that the contract of the attorneys could not be enforced because they had been negligent, and that adjudication necessarily controls the present controversy, so far as the Messrs. Williams are concerned, for if they had no lien upon or right to the fund in court, by virtue of their contract, they had no right to object to the payment over to Mr. Barkley.

The Raines Brothers were not parties to the proceeding which resulted in the order of substitution, and, although they knew it was pending, and one of them was sworn as a witness therein, they are not bound by it unless they were in privity with the Messrs. Williams. So far as we are informed, there has been no claim asserted nor adjudication made throughout this controversy, in the various forms which it has assumed, that the Raines Brothers were guilty of negligence or of other improper conduct; still, if, according to the contracts, they were privies to the Messrs. Williams, they are bound by the misconduct of their principals, although in nowise personally responsible for it.

The first contract entered into between Barkley and the Messrs. Williams provided that they were to have an equal third part of all damages recovered by him in the action against the railroad company in lieu of any other compensation for their services as attorneys therein. Subsequently this agreement was modified so as to provide for the employment of the Raines Brothers as counsel by increasing the amount going to the Messrs. Williams to one-half of the sum that might be recovered from the company. The recital in this contract indicates that Barkley was to employ the Raines Brothers, but the actual agreement was that Barkley was to pay the Messrs. Williams one-half instead of one-third of the recovery for their services as well as for the services of the Raines Brothers, and the former were to employ the latter and

pay them " from said one-half for their services," the amount
not being specified.  Accordingly the Messrs. Williams entered
into an agreement with the Raines Brothers, in consideration
of services to be rendered by them as counsel, to pay them
one-half of what they, as attorneys of record for Barkley, were
to receive by their second agreement with him.

Where the recital in an agreement is so inconsistent with
the covenant or promise that they cannot be harmonized, the
latter, if unambiguous, must prevail, because it is the most
important.  The promise is what the parties agreed to do, and
hence is the operative part of the instrument, while the
recital states what led up to the promise and gives the induce-
ment for making it.  When the explanation of the reason for
the promise is at variance with the promise itself, the latter,
if clear and unambiguous, must prevail, as it is the transaction
between the parties.  The rule governing the subject is well
stated in a late English case as follows : " If the recitals are
clear and the operative part is ambiguous, the recitals govern
the construction.  If the recitals are ambiguous and the opera-
tive part is clear, the operative part must prevail.  If both the
recitals and the operative part are clear, but they are incon-
sistent with each other, the operative part is to be preferred."
(*Ex parte Dawes*, L. R. [17 Q. B. Div.] 275, 286.  See, also,
*Young* v. *Smith*, L. R. [1 Eq. Cas.] 180, 183; *Bailey* v.
*Lloyd*, 5 Russ. 330, 344.)

Whatever may be said of the recitals in the contract under
consideration, the operative part is clear and must, therefore,
prevail under the rule adopted.  There was a distinct agree-
ment by Mr. Barkley to pay the Messrs. Williams one-half of
the recovery for their services and for the services of the
Raines Brothers in the action, and the Messrs. Williams agreed
to employ the latter and pay them from their half.  They did
employ them accordingly, not in the name of Barkley, but in
their own names, and agreed to pay in their own names and
from their own share.  The Raines Brothers had no contract
with Barkley, for their only contract was with the Messrs.
Williams, and they acquired no right except through and

8

against them. They were represented by and claimed under them. They had an interest derived from a contract to which they were not parties. This derivative interest, founded wholly on the contract of other persons, placed them in privity with those persons. Their only claim was under their contract with the Messrs. Williams, which gave them an interest in the latter's contract with Barkley, and thus there was a mutual relationship between the two firms to the right springing from the promise of Barkley. They were employed as counsel by the attorneys of record, who agreed to pay them from their own share, which was simply increased by the client to enable them to do so. "The term privity denotes mutual or successive relationship to the same rights of property. The ground, therefore, upon which persons standing in this relation to the litigating party are bound by the proceedings to which he is a party, is, that they are identified with him in interest; and whenever this identity is found to exist all are alike concluded." (1 Greenl. Ev. § 523, quoted with approval in *Litchfield* v. *Goodnow*, 123 U. S. 549, 551.) The Raines Brothers, therefore, were in privity with the Messrs. Williams, and, so far as Mr. Barkley is concerned, were bound by their negligence and the adjudication made in consequence thereof, although they had not contributed to it. Hence the plaintiff is entitled as against them also to have the fund in court paid over to him.

The question certified was framed in disregard of our suggestion that each question should be separately stated so that it may be categorically answered. (*Devlin* v. *Hinman*, 161 N. Y. 115.)

We think that the former adjudication determined the rights of all concerned to the fund in court, and that it is binding upon all the parties to this action.

The order appealed from should be affirmed, with costs, and the question certified answered as above stated.

Parker, Ch. J. (dissenting). The title of the action indicates that this is a controversy between attorneys and client,

but it is not so in reality.   A jury has decided that Barkley's
injuries were due to the fault of the New York Central and
Hudson River R. R. Co. and fixed the damages, which, with
interest to the present time, amounts to about $13,000 and the
railroad company has paid over the money in obedience to the
order of the court, so the railroad company is not interested
in this controversy ; nor does Barkley, the injured man, seem
to be interested, for he acknowledges that under the contract
made he is entitled to only the one-half already paid, so that
the dispute relates to the other half, now amounting to about
$6,500 and on deposit with the treasurer of Monroe county
to await the further order of the court.

The question pressing for solution is whether Frank C.
Sargent, who was substituted as attorney for Barkley after
the entry of judgment and its affirmance, shall have the entire
fund, or whether he shall be compelled to relinquish his grasp
upon some part of it for the benefit of Raines Brothers, who,
as counsel for Barkley's attorneys of record, tried the case at
the Circuit, prepared the brief and argued the case at the
Appellate Division.

Sargent is not entitled to any special sympathy in his effort
to secure the half of the moneys that the jury adjudged due
for the injuries of Barkley, for he contributed nothing towards
getting the judgment, and his demand, therefore, to share
equally with Barkley in the amount awarded to him, as com-
pensation for his injuries, has its only justification in the letter
of his contract.

On the other hand, Raines Brothers, as counsel, not only
conducted the trial, but performed the services on appeal which
resulted in an affirmance of the judgment.   It would seem
equitable, to say the least, that having done all the effective
work, they should share with Sargent in some measure in the
fund, unless guilty of some misconduct that should be prop-
erly visited with forfeiture of compensation ; and no claim of
that nature is made.   It is true that Barkley's attorneys, for
whom the Raines Brothers acted as counsel on the trial of the
action and on the appeal from the judgment, have been

adjudged negligent in another proceeding, but it was not adjudicated therein that the Raines Brothers were at fault, nor has an attempt been made to show in this action that they were in anywise to blame, and it would seem to follow in all good conscience, therefore, that they should be compensated for their services out of this fund ; and the question is whether their contract compels them to share with Barkley's attorneys in the loss of compensation.

The answer to that question depends upon the construction to be given to certain contracts entered into between Barkley and his attorneys and between the attorneys and Raines Brothers. If they constituted an employment of the Raines Brothers by Barkley, then the Raines Brothers are entitled to share with Sargent in this fund. If, on the other hand, they amounted to a hiring of the Raines Brothers by the plaintiff's attorneys, Barkley is not responsible to them, the Raines Brothers, and they must suffer because of the adjudication that the plaintiff's attorneys were negligent, and, therefore, not entitled to the agreed compensation.

Barkley made a contract with his attorneys to pay to them one-third of the recovery for their services in the action, but before the action came on for trial Barkley and his attorneys seem to have had some consultation as to the desirability of employing George Raines of Rochester to assist in the trial of the action, and of his brother Thomas Raines for the preparation of the case for trial, and the result was an agreement on Barkley's part that this should be done, and in order to accomplish it he agreed that one-half of the recovery, instead of one-third, should be appropriated to the payment of attorneys and counsel. The agreement signed by Barkley, among other things, contained the following :

" Whereas, my said attorneys propose to employ other counsel to help try the case, and it is proposed by them and agreed to by me *that I employ Hon. George Raines of Rochester for that purpose,* to be assisted, if necessary, in the preparation of the case by his brother at Rochester."

The agreement further provided that Barkley should pay

one-half of the moneys recovered from the railroad company to his attorneys, out of which the Raines Brothers should be compensated for their services, but in the event that they should not be engaged, then the agreement to be void and resort had to the former agreement.

Thereupon Barkley's attorneys entered into an agreement with Raines Brothers by which it was provided, among other things, that,

" Said Raines Brothers agree to render their services and assist in retrying said case if a new trial is granted therein and as often as a new trial is had therein."

They also agreed to argue the case on appeal if requested to do so by the plaintiff's attorney.

Now it will be observed that Barkley did not make a written contract with the Raines Brothers, but did make one with his attorneys, who in turn made one with the Raines Brothers, and, therefore, there is some color for the claim that the Raines Brothers were not employed by Barkley, but if we examine the contracts closely for the purpose of ascertaining what the parties intended, it would seem as if the conclusion must be reached that all of the parties to the agreement intended that Barkley should employ the Raines Brothers, but inasmuch as he did not propose to take any personal risk in the matter, he desired that it should be provided that neither attorneys nor counsel should have compensation except out of the recovery, and so he arranged to increase the proportion of the recovery to be paid for the services of attorneys and counsel in order to secure the services of Raines Brothers, while the latter desired such an agreement as should give them the right to a lien on, and share in, that portion of the recovery which Barkley was willing should go to his attorneys and counsel.

The parties evidently deemed the form of the agreements adopted as best calculated to effect that result, but that the understanding was that Barkley was employing the counsel is shown not only by the fact that he agreed that a larger proportion of the recovery should be devoted to the payment of counsel in the event that the Raines Brothers should agree to take

hold of the case, but also by the recital in the agreement that " It is proposed by them (his attorneys) and agreed to by me that I employ Hon. George Raines of Rochester, for that purpose."

The agreement further provided the method by which the compensation, if any, should be secured and the attorneys were to be merely the conduit through which the increase in compensation should, in the event only of success, reach the Raines Brothers, thus securing Barkley against the possibility of other and further demands ; but these were incidents to the general scheme of the employment of Raines Brothers by Barkley, intended for his protection as well as that of Raines Brothers, and should not be permitted to overcome the recital that " It is · * * * agreed to by me that I employ Hon. George Raines of Rochester for that purpose," which clearly manifests the understanding of the parties.

If we give to this recital that full force and effect which its terms plainly warrant, we must reach the conclusion that it was the intent of the parties that Barkley should employ the Raines Brothers as counsel and that they should be paid through his attorneys, to whom he agreed to give an increased compensation for that purpose and for no other. Indeed the agreement was to be void unless Raines Brothers should accept the employment. If the contracts be so construed, it will be in accord with the manifest intention of the parties and work out a just result in this case, inasmuch as it allows counsel who did the work to share with an attorney who did not, in the fund now in the hands of the county treasurer.

But it is said in the prevailing opinion that the statement in the contract to the effect that it was agreed that Barkley should employ the Messrs. Williams is a mere recital, and being in conflict with the operative part of the agreement, the former must give way. Without discussing either the principle or the authorities relied upon in support of the argument that the plain words of recital in the Barkley contract should be utterly disregarded, it may not be out of place to say that the principle of construction invoked is subordinate to that which has often been designated by this court as the polar

star of interpretation, namely, the intent of the parties. It was said in *Gillet* v. *Bank of America* (160 N. Y. 549, 555), " In the construction of written contracts it is the duty of the court, as near as may be, to place itself in the situation of the parties, and from a consideration of the surrounding circumstances, the occasion and the apparent object of the parties, to determine the meaning and intent of the language employed. Indeed, the great object, and practically the only foundation of rules for the construction of contracts, is to arrive at the intention of the parties. This is a most conspicuous and far reaching rule and involves the nature of the instrument, the condition of the parties and the objects which they had in view, and when the intent is thus ascertained, it is to be effectuated unless forbidden by law. Contracts are not to be interpreted by giving a strict and rigid meaning to the general words or expressions without regard to the surrounding circumstances and the apparent purpose which the parties sought to accomplish."

Applying this rule so recently laid down by this court to these contracts, we take up what has been spoken of as the operative part of the contract, remembering that in the recital it is plainly stated that Barkley was to employ Raines Brothers as counsel in the case. In effect its provisions are that Barkley agrees to deliver to Messrs. Williams one-half of the amount received of the railroad company for two purposes, *one*, to compensate them for their services as attorneys, and, *two*, that they should deliver the remainder to Raines Brothers in compensation for their services as counsel and in place of any other payment to them. It then provides that the Messrs. Williams are to agree with Raines Brothers to compensate them from the one-half that should be turned over to them for services, and that in the event that Raines Brothers should not be employed, that the agreement should be void. It seems to be apparent from this statement that the fundamental purpose of this contract was to procure the services of Raines Brothers for the benefit of Barkley and to provide for their compensation out of a recovery from the railroad company. By this

contract the Messrs. Williams were not in any proper sense to pay Raines Brothers for their services. They incurred no personal liability, nor did Raines Brothers in any way accept their personal responsibility as security for their pay, but Messrs. Williams were to deliver to Raines Brothers a part of the particular fund which was to consist of one-half of any amount which Barkley should receive from the railroad company. The manifest purpose of Barkley's agreement, therefore, was to provide a fund to secure to the Raines Brothers compensation for their services. It was only to accomplish that purpose that the change in the form of the original contract became necessary. Nor was there any provision in the subsequent contract by which the Messrs. Williams personally agreed to compensate the Raines Brothers for their services. Barkley agreed to pay over one-half of the recovery against the railroad company to Messrs. Williams, not alone to compensate them, but for the further purpose of discharging all liability that he should incur to Raines Brothers for any services that they should render in the action. In other words, it was the intent of the parties to secure the services of Raines Brothers and to provide that they should be paid therefor, not by the Messrs. Williams, but by Barkley from the particular fund which the latter should set apart for that purpose from the recovery, if one should be had.

The intent of the parties, as gleaned from the operative portions of the contracts, is, therefore, in harmony with the assertion of the parties as expressed in the recital of the first contract to the effect that it was proposed by the Messrs. Williams and agreed to by Barkley that the latter should employ the Raines Brothers as counsel in the case. And the contract should be given the effect which the parties to it intended.

I advise a reversal of the order of the Appellate Division and an affirmance of that of the Special Term.

GRAY, BARTLETT and CULLEN, JJ., concur with VANN, J., for affirmance; MARTIN and WERNER, JJ., concur with PARKER, Ch. J., for reversal.

Order affirmed, etc.