THE HAMMERSTEIN AMUSEMENT COMPANY, Respondent, *v.* A. PAUL KEITH, as Executor, etc., of BENJAMIN F. KEITH, Deceased, and Others, Appellants, Impleaded with PERCY G. WILLIAMS and Others, Defendants.

Second Department, February 9, 1917.

Injunction — contracts restricting competition between theatrical companies in the city of New York construed — limit of remedy by injunction.

The stockholders of a theatrical booking agency and the defendants, owners of theatres and in control of the booking agency, entered into a contract distributing the territory for vaudeville theatres in the city of New York so that a person named should operate exclusively in a designated district, precluding any increase in the number of theatres in such district and providing that the person named should book through the agency all vaudeville actors and performances. Thereafter two other similar contracts were made, to one of which the plaintiff succeeds, providing that " in the event that any one of them shall violate any of the covenants of *this* agreement * * * any of the other parties hereto may apply for and obtain an injunction restraining the continuance of such breach," etc.

Provisions of the three contracts construed, and *held*, that the plaintiff, who was not a party to the first contract, is not entitled, because of the provisions in the subsequent contracts, to damages and an injunction restraining the defendants from operating a theatre in a district outside of and totally different from that allotted to it, there being no evidence of damage.

The separate contracts, framed to parcel out territory and so restrict theatrical competition, should not be enlarged by construction.

The injunctive remedy provided therein should be limited to the redress of real wrongs.

THOMAS and MILLS, JJ., dissented, with opinion.

APPEAL by the defendants, A. Paul Keith, as executor, and others, from an order of the Supreme Court, made at the Westchester Special Term and entered in the office of the clerk of the county of Westchester on the 23d day of December, 1916, granting plaintiff's motion for an injunction *pendente lite* restraining the appellants from opening and operating the Riverside Theatre as a vaudeville theatre and granting further relief.

*Edward E. McCall* [*Maurice Goodman* and *William F. S. Hart* with him on the brief], for the appellants.

*David M. Neuberger* [*James G. Graham* with him on the brief], for the respondent.

PUTNAM, J.:

The Riverside Theatre has been here enjoined without evidence of damage to plaintiff. It is about three miles away, at Ninety-sixth street, in a neighborhood totally different. Plaintiff has no vaudeville theatre, and does not show any purpose to open one. The agreement (A) was something more than an allotment of Manhattan territory. It treated of matters in other boroughs of New York city, and even in other States. It laid down an area west of Fifth avenue within which the Victoria Theatre and the Manhattan Opera House might thereafter make use of the United Booking Offices. The signers of this contract A were the stockholders of the United Booking Offices, in which plaintiff had no interest. Exhibit C set off for the Victoria Theatre the territory from Fortieth street to Forty-eighth street, and for the Manhattan Opera House a zone from Thirty-fourth street to Forty-second street; with right, in case either structure should be destroyed by fire or casualty, to rebuild or replace it.

Though not a signatory to A, plaintiff now asserts that through contracts B and C he became a full party to A, and entitled to enforce any and all its stipulations.

I think plaintiff's stipulation for an injunction and to the corresponding $25,000 as partial damages was specially limited to protecting plaintiff within its territory as defined in Exhibit B, that is, between Thirty-second street and Fifty-sixth street. And this territory is materially different from that referred to in Exhibit A as left for the Victoria Theatre and the Manhattan Opera House. Plaintiff is not interested in a show at Ninety-sixth street. These three contracts in their elaborated terms and conditions bear marks of great and minute care. Doubtless there were reasons why these differing engagements were not united in a single instrument. The conditions of B to which plaintiff succeeds were "in the event that any one of them shall violate any of the covenants of *this* agreement,

* * *   any of the other parties hereto may apply for and obtain an injunction restraining the continuance of such breach," etc.

Plaintiff did not thereby become vested with this extreme remedy as to all matters provided in A. Suppose that some signatory of A were, against its covenant, to invade by vaudeville shows Staten Island, Long Island City or Astoria, the field of the Keith & Proctor Company, and thereby increased the total of vaudeville shows in Greater New York. Could plaintiff have an injunction and $25,000 as stipulated "partial damage" for this new and distant theatrical attraction? Even when plaintiff operated the Victoria Theatre it never objected to what was done outside the Victoria Theatre zone. The Prospect Theatre was erected in Brooklyn in 1914, and has since been operated as a vaudeville theatre without objection on the part of the plaintiff; and ever since February 11, 1907, the United Booking Offices have booked artists for other theatres not parties to either of these contracts, all in the borough of Manhattan, without objection or protest from the plaintiff.

Such separated contracts, all elaborately framed to parcel out territory and so restrict theatrical competition, should not be enlarged. In order to make enforcible a negative covenant that will be of no practical avail to plaintiff, are we to merge and read into each other by judicial construction that which the parties have designedly kept distinct and separate? I would limit an injunctive remedy to the redress of real wrongs.

Hence, I advise to reverse the order of the Special Term, with ten dollars costs and disbursements.

JENKS, P. J., and RICH, J., concurred, THOMAS, J., read for affimance; MILLS, J., voted to affirm.

THOMAS, J. (dissenting):

Under the date of February 11, 1907, a contract (herein called Contract A) was executed by several parties whose interests are represented by the appellants. The individual appellants control the appellant the United Booking Offices, and they are making or defending the alleged breach of the contract, to wit, the operation of a vaudeville theatre in a neighborhood bounded north by the Harlem river, east by Lenox avenue, south by Ninety-sixth street and west by the Hudson

river. The contract as regards this inquiry has three general purposes: (1) To distribute the territory for vaudeville theatres in the city of New York so that a person named, or his assigns, should operate exclusively in a designated neighborhood or zone specifically bounded; (2) to preclude any increase in the number of theatres in such territory; (3) to book through the company all vaudeville actors and performances, and to confine the parties to such booking. The appellants are operating or countenancing another vaudeville theatre in the neighborhood described between Ninety-sixth street and the Harlem river, a zone by the contract appointed to the Alhambra Theatre at One Hundred and Twenty-sixth street and to the owners thereof. The Alhambra Theatre is owned by the individual appellants, or some of them, and no one, save plaintiff, complains that the owners of the Alhambra are duplicating vaudeville operation in their own territory, although any party to the contract could complain, as thereby the number of theatres in the city of New York is increased. But why should plaintiff complain? It was not a direct party to the contract. But the Contract A contemplated that parties, whom I will here call the Hammersteins, should have some relation to the arrangement. For in the limitation of the area of theatres it is provided: "The boundaries of the neighborhood in which Victoria Theatre, now erected at 42nd Street and Seventh Avenue is situated, shall be south by 40th Street, north by 48th street, east by Fifth Avenue and west by Hudson River. The boundaries of the neighborhood in which the Manhattan Opera House now erected at Thirty-fourth Street, between Seventh and Eighth Avenues, is situated shall be south by 34th Street, east by Eighth Avenue, west by Hudson River, and north by 42nd Street. * * * The party of the first part hereby agrees that it will not book or engage any acts or render any services to or permit its offices to be used by or for the benefit of any vaudeville theatre in the City of New York, or for the owner, lessee, manager, agent or employee of any such vaudeville theatre, except such as are now operated by any of the parties thereto, and except such as they or any of them may hereafter acquire or become interested in and operate under the provisions of this agreement, and except also the Victoria Theatre and Manhattan Opera House, upon the

conditions aforesaid." Paragraph III of the contract also provides: "The party of the first part shall and will whenever requested so to do, act as booking agent for and give the free use of its booking offices to each of the other parties hereto, and to the owners, lessees and managers of the Victoria Theatre, situated at 42nd Street and Seventh Avenue, in the City of New York and of the Manhattan Opera House situated on 34th Street, in the City of New York, upon the terms mentioned in the preceding paragraph, whenever the owners, lessees or managers of said last two mentioned theatres shall make an agreement with the party of the first part, substantially upon the terms and in the form hereto annexed." But the plaintiff owned the Victoria Theatre and Manhattan Opera House, and although it was not executing the contract, two neighborhoods were conditionally provided for it. The reason appears. Under the date of February 11, 1907, the date of the contract A, contract B was executed by the Hammersteins and all the parties to contract A, and on the same day the United Booking Offices and the Hammersteins entered into another contract, contract C. The plaintiff got no rights in the initial contract other than those given by the contracts B and C, but, having ascertained what the later contracts did assure it, the three contracts must be read together. By contract B the Hammersteins stipulate that during the period of the agreement, the term whereof is twenty years, (1) they will not operate in the city of New York any vaudeville theatre, save the Victoria Theatre and the Manhattan Opera House (should it be changed to vaudeville), with the modification that if either of such theatres be destroyed by fire or the operation of the Victoria Theatre for vaudeville purposes should be discontinued, the parties interested could operate a vaudeville theatre in its place in the immediate neighborhood; (2) that they will "not in any manner acquire, operate or become interested in, or associated with, either directly or indirectly, any other vaudeville theatre in any city in which there is then a vaudeville theatre booked through or in the offices of the party of the first part, or operated as such by any of the parties of the second part." The parties of the second part, whose interests are here represented by the appellants Keith, Proctor and Albee, stipulated

that so long as the Hammersteins shall book for their vaudeville
"theatre" (the Victoria meaning) through the first party, the
United Booking Offices, and perform their part of the agree-
ment, the second parties will not "lease or otherwise acquire and
operate, or in any manner become interested in or associated
with, any vaudeville theatre in the Borough of Manhattan * * *
within the territory bounded as follows," and then follows a
description of an area entirely south of Fifty-sixth street and
north of Thirty-second street.    That stipulation has been kept
by the appellants making it, and the territory remains invio-
late save as modified by agreement later noticed.    But the
plaintiff goes farther and declares that the stipulators cannot
operate a vaudeville theatre outside the area so described, in
this instance in their own designated neighborhood or zone,
unless it be the theatre localized in such neighborhood by con-
tract A.    In other words, the plaintiff urges that the agree-
ment between the signers of contract A, not to increase the
number of theatres in the city of New York, is available to
plaintiff, although the individual appellants and plaintiff
agreed upon a carefully bounded area wherein such person
should not operate.    The plaintiff in support of its contention
invokes the recital in contract B: "Whereas, the parties of the
first and second part [meaning the signers of contract A] did
heretofore enter into an agreement whereby each of the parties
of the second part agreed to and with each other and the party
of the first part, among other things, to limit the number of
theatres in said city, that each of them shall operate and con-
duct therein; and whereas, the parties of third part, or some
of them [meaning the Hammersteins] or one or more of them
does now operate a vaudeville theatre in the Borough of Man-
hattan, * * *, known as the Victoria Theatre, and the par-
ties of the third part [Hammersteins] desiring to avail them-
selves of the benefit of the agreement above referred to, now,
Therefore," etc.    It cannot be doubted that one essential object
of contract A was to limit the number of theatres, for such pro-
vision pervades the entire agreement, and in words it is written:
"It being the object of the parties that the number of vaude-
ville theatres in operation by each of them in the Borough of
Manhattan, City of New York, should not be increased, except-

Second Department, February, 1917.    [Vol. 177.

ing as herein otherwise provided." The recital in contract B is broader than the several stipulations in the body of it, and according to a well-known rule of interpretation the specific terms of the agreement control the recital, where the two are inconsistent. (*Williams* v. *Barkley*, 165 N. Y. 48, 57.) In other words, while the recital in "B" indicates a desire of the plaintiff to avail itself of the first agreement "A," the operative part of B merely excludes appellants from invading a certain area between Fifty-sixth and Thirty-second streets, while it not only limits the Hammersteins to a given area, but also confines them to two possible vaudeville theatres therein; that is, appellants, as against plaintiff, can increase the number in their zones, each and every one, while plaintiff cannot add to its holdings. Attention has already been called to the fact that in behalf of the Victoria Theatre and the Manhattan Opera House two neighborhoods were created by contract A, bounded on the north by Forty-eighth street and on the south by Thirty-fourth street, which neighborhood is better protected from invasion as to its north and south limits by contract B. What was contract C, which only the booking company and the Hammersteins executed? The agreement is that the Hammersteins shall book only through the booking company, for the "Victoria Theatre, or for any other vaudeville theatre they or either of them may operate;" that the booking company shall give the Hammersteins free use of its offices and employees for the employment of artists, acts and numbers for "said vaudeville theatre and theatres;" that the Hammersteins will limit themselves to the Victoria Theatre, except that in case of its discontinuance they may operate in its stead a vaudeville theatre within the area bounded by Fortieth and Forty-eighth streets on the south and north and the Hudson river and Fifth avenue on the west and east, and except further that the Manhattan Opera House, if changed after a given time to vaudeville theatre, may book through the booking company, in which event the Hammersteins shall be confined to that agency, with the further provision that if the opera house should be destroyed by fire or casualty, the plaintiff shall be limited to another theatre in an area bounded by Thirty-fourth street and Forty-second street

and the Hudson river and Eighth avenue. Thereupon a territory is laid out lying between Fifty-sixth street and Thirty-second street on the north and south and definite east and west boundaries, corresponding to that in contract B, within which the booking company agrees that "it will not employ or engage any artists, acts or numbers for any vaudeville theatre," except such as may be operated by the Hammersteins therein, and will not act as "agent or in any manner be interested in, or associated with any other vaudeville theatre within the territory," nor permit its officers, employees or agency "to be used for the employment of acts, artists and numbers, or otherwise by the owner, lessee, manager or other person interested in any vaudeville theatre which may be located within the territory hereinafter described." The plaintiff contends that the booking company agreed, not only to do and to forbear doing the above things within the described territory, but within any other territory which was subject to regulation and restriction by virtue of contract A. It is plain that the parties to contract A to which the Hammersteins were not immediate parties, partitioned the territory of the city and other places among themselves and left two neighborhoods, one for the Victoria Theatre (Fortieth to Forty-eighth streets) and one for the Manhattan Opera House (Thirty-fourth to Forty-second streets) to be treated by contracts B and C of the same date. By contracts B and C the Hammersteins agreed not to invade any territory, wherein a vaudeville theatre booked through the booking company, or conducted by any of the other operators, existed, and in the city of New York to limit themselves to the Victoria Theatre and Manhattan Opera House, or theatres in place thereof, to which were assigned areas as above described, and the appellants agreed to keep clear of such neighborhoods, and even a neighborhood somewhat greater in length, described as between Thirty-second and Fifty-sixth streets, for which area the booking company agreed to book and for which the Hammersteins promised to book through the appellant company. The plaintiff suggests that if the parties to contract A may among themselves multiply their holdings within their several neighborhoods, the territory adjacent to that reserved to the Hammersteins may become

Second Department, February, 1917.      [Vol. 177.

the seat of vaudeville theatres, indefinite in number. But it should be noticed in that connection that the territory that the individual appellants agreed not to invade is somewhat longer than that reserved for the Victoria Theatre and the Manhattan Opera House, whose zones are between Thirty-fourth and Forty-eighth streets, while the protected area is between Thirty-second and Fifty-sixth streets. In any case, there is made certain what territory the appellants in terms agreed to respect and for which they agreed to book. If I were looking only to the body of contracts B and C, it would be clear that the court may not enlarge the boundaries which the parties so carefully laid down in these contracts. But contract A had the three well-defined general purposes above indicated, and no end is more apparent than the one to limit the vaudeville theatres in the city of New York. Limitation in number in the whole city, limitation of the number in each zone or neighborhood, and appointment of a zone to a named party, and booking accordingly — such was the scheme of contract A. Place was left for the Hammersteins. By contracts B and C they were fitted to the zones reserved for them in contract A. The individual appellants agreed to keep out of such zones. They did not in terms say that they would not invade other zones, or would not increase the number of vaudeville theatres in New York. But the parties presented to the Hammersteins contract A as valid and unbroken, and one to be kept without a breach. They represented to the Hammersteins that there was a limit to the number of theatres that the parties to contract A could operate. They recognized that the Hammersteins desired the benefit of that provision; they narrowed their right of ownership, interest and operation to two zones with one theatre in each; they took from them all right to intrude on them; they promised that they would not intrude on them. It is not inconsistent with such stipulations, but cognate to them, that they should keep their contract in the integrity of its purpose, and that they should not alter its broadest design — a design alone selected in the recital of contract B to induce the Hammersteins to the limitation that they put upon their ownership and operation. Contract A was manifested to the Hammersteins as establishing a

status, as creating a limitation, as a bond among certain men that a fact existed and should exist. It was not a mere lure to entrap the Hammersteins, but an evidence of something established and irrefragable. I do not pause at the inquiry whether the Hammersteins were parties to contract A, but go on to that more just — that broader conclusion that the parties to that contract cannot assert its verity to induce the Hammersteins to a pledge limiting their power and range of ownership, and straightway dissolve it by breach, and dissipate thereby its purpose and benefit. But there is a written contract, under the date of April 19, 1913, executed by the Hammersteins, first parties, the United Booking Offices, the second party, and the Palace Theatre and Realty Company, the third party. The booking company wished to book the Palace Theatre in the Hammerstein zone, and the Hammersteins allowed them to do so in consideration of $225,000. But the important thing is that the parties recognized that the first and second parties had entered into two agreements, A and B. Moreover, if all of Hammerstein's rights are found in B and C, why did the parties in contract B refer to A, and why, in the contract of April 19, 1913, was there specific reference to A? Is that all mere ineffective formality? But, if the appellant's contention be adopted, what benefit do the Hammersteins get from contract A? I can find nothing. It becomes a mere idle recital — a pretext — a deluding inducement. It is alleged that there is no mutuality. But Hammersteins' operations are tied to the two zones. They have renounced vaudeville business elsewhere for twenty years. It is urged that the Victoria and Manhattan have been leased to other parties and not for vaudeville performances. But they may resume vaudeville at any time. Meanwhile, the Hammersteins are tied to their locality. It is asserted that the Hammersteins are guilty of a breach of their contract. That is a matter for the trial. It is contended that the plaintiff is not damaged. The stipulation for a specific sum for breach imputes recoverable damage.

The order should be affirmed, with ten dollars costs and disbursements.

Order reversed, with ten dollars costs and disbursements, and motion denied, with ten dollars costs.