*230 OPINION.
SteRnhagen :
The petitioners prior to April, 1920, were the shareholders of the Golden State Asparagus Company. On April 17, 1920, they, in performance of a contract of January 13, 1920, sold their shares to the agent of the Western Canning Company for the stated price of $200,000. They so treated the transaction on their 1920 income-tax returns and deducted the resulting loss. The respondent has now determined that the price received by petitioners was not only the stated purchase price, but also included mortgage notes aggregating $400,000, which petitioners have treated as a dividend received by them from the Asparagus Company. Respondent defends his determination on the theory that by virtue of a single plan reflected in the contract of January 13, 1920, it was intended only that petitioners should transfer their shares to the Canning Company and receive instead cash and mortgage notes.
The determination, in our opinion, can not be sustained. It requires too wide a departure from accepted legal doctrines and Avould override plain provisions of the tax law, so as to assess a tax beyond that imposed by Congress.
The plan is found in the contract of January 13, 1920, and the evidence leaves no doubt that it was performed in strict accordance with its terms. The recital is drawn with less artistic accuracy *231 perhaps than the operative provisions,- but it is fairly clear that more was contemplated than the sale and purchase of shares; and in so far as this may be doubtfully expressed, the doubt is immediately removed by the detailed transactions set forth in the integration. A doubt in the recital would not serve to take from any of the enumerated transactions their legal character. “ Whatever may be said of the recitals in the contract under consideration, the operative part is clear, and must therefore prevail under the rule adopted.” Williams v. Barkley, 165 N. Y. 48; 58 N. E. 765, 767. “What was done rather than the design and purpose of the participants should be the test.” United States v. Phellis, 257 U. S. 156.
By the operative provisions of the contract, the Asparagus Company agreed to sell and the Canning Company to buy the business and most of the assets for $230,000 in cash and $400,000 in periodic promissory notes secured by a mortgage on the property; the Asparagus Company agreed to declare and distribute a dividend of its entire surplus, which would include the mortgage notes; and the shareholders agreed to sell and the Canning Company to buy all the shares at par, which, as a result of the dividend, coincided with actual and book value. ' There were provisions for subsequent steps whereby the Canning Company was to reconvey to the Asparagus Company so that the business would be continuously carried on by the Asparagus Company, but this did not affect the shareholders. The transactions thus clearly provided for were precisely carried out, and the legal integrity of each step is clearly sustained by the evidence. The assets were in fact conveyed by the Asparagus Company and the cash and notes in the amount of $630,000 received, the dividend was properly declared and actually distributed, consisting of all the Asparagus Company’s assets above $200,000, and the shares were delivered by the shareholders to the Canning Company, and the $200,000 cash received by them. Thus in form, in fact, and in legal substance what these petitioners received were two separate and necessarily distinct things from two different sources by virtue of two different transactions with two different people — one, a dividend from the Asparagus Company payable to them only while and because they were shareholders, and the other, the purchase price from the Canning Company for these very shares. Whatever the effect of these events may be upon the petitioners’ taxes (or, for that matter, upon the taxes of any other party to these transactions), this is what happened and what in law must be recognized.
It has too often been held that a corporation is.legally distinct from its shareholders, and that in the absence of fraud or unfairness their separate acts are not to be confused with each other, to admit of the disregard here of the intervening transactions. Donnell v. Herring-Hall-Marvin Safe Co., 208 U. S. 267, 273; Eisner v. Macom *232 ber, 252 U. S. 189, 208; Planters Cotton Oil Co. v. Hopkins, 286 U. S. 332; Nixon v. Commissioner, 42 Fed. (2d) 833. To sustain the respondent would logically require ignoring the true gain or loss to the Asparagus Company from its sale of its assets. Furthermore, it would confuse the separate costs to the Canning Company of the assets and of the shares, for if the shareholders are to be treated as receiving for their shares not only the $200,000 price which they did receive, but also the $400,000 of the $630,000 paid to the Asparagus Company, then the Canning Company must by cognate reasoning be treated as paying $600,000 to petitioners for the shares and $230,000 to the Asparagus Company for the assets. Furthermore, since the dividend of the Asparagus Company was of all its surplus and this, as shown by the findings, included not only the mortgage notes, but also the cash on hand, bonds of $26,000, and receivables, to say nothing of the withholding of the $200,000 capital, the respondent’s idea would require more than Procrustean treatment.
It may be added too that in California as elsewhere, the shareholders could not convey title to the corporate assets, Gashwiler v. Willis, 33 Cal. 1; Phelan v. All Persons, 259 Pac. 725, and to ignore the sale by the Asparagus Company would be to take from the transaction the very element which gives it force. United States v. Board, 14 Fed. (2d) 459; Beisner Mfg. Co., 13 B. T. A. 841.
For the respondent, it is suggested that, even if .the petitioners are to be regarded as receiving the mortgage notes from the Asparagus Company, such distribution was in liquidation and hence not tax free as a dividend, sec. 234(a) (6), but taxable as a gain under section 201(c), citing Hellmich v. Hellman, 276 U. S. 233. This suggestion, which counsel does not expound, can be readily dismissed, since the evidence lends no support to a finding of liquidation, but clearly establishes that the Asparagus Company was expected to and did continue as a going concern.
It must not be forgotten that Congress has not left this situation to be dealt with by judicial construction of doubtful language. It is squarely and outspokenly dealt with in the Revenue Act of 1918. Dividends of incorporated shareholders are by section 284(a)(6) called deductions and thus serve to reduce taxable net income, the purpose obviously being to avoid taxing the same income more than once in the course of consecutive corporate ownership. Gain or loss from sale is covered by section 202. It is not the province of judicial determination to override this clear statutory scheme, and, by disregarding the legal substance expressly contemplated by the statute, find a greater tax than Congress has imposed.. From this record we are not in position to say how the tax revenue from *233 the transactions in their entirety works out, but the fact that these petitioners may be free from tax at the time and point of their contact with the plan is because the method which the parties chose has been by Congress given this effect. The Commissioner has no rightful power to deprive them of it directly or to distort the legal significance of their proper conduct to bring about such deprivation.
Since we thus decide that the theory applied by the Commissioner is basically incorrect, it is unnecessary to consider whether the notes when received as a dividend had a fair market value and, if so, how much, and it is also unnecessary to consider the fair market value on March 1, 1913, of the Asparagus Company’s properties, since the value of the shares acquired prior to that date seems to have been regarded by both parties as higher than prior cost. In respect of the shares acquired by petitioners after that date, the cost is of course the basis of gain or loss.
Reviewed by the Board.
Judgment will be entered ■ 'under Rule 50.