KOGOD et al. v. STANLEY CO. OF
AMERICA et al.

KASS REALTY CO., Inc. v. KOGOD et al.
STANLEY CO. OF AMERICA v.
KOGOD et al.

Nos. 10398–10400.

United States Court of Appeals
District of Columbia Circuit.

Decided Dec. 21, 1950.

Mr. Robert E. Sher, Washington, D. C.,
with whom Messrs. Monroe Oppenheimer
and William P. Bernton, Washington, D.
C., were on the brief, for appellants and
cross-appellees Fred S. Kogod and Max
Burka, individually and as copartners do-
ing business as K-B Amusement Co.

Mr. Louis Ottenberg, Washington, D.
C., with whom Mr. H. Max Ammerman,
Washington, D.C., was on the brief, for
appellee and cross-appellant Kass Realty
Co., Inc.

Mr. Philip W. Amram, Washington, D.
C., with whom Mr. James M. Carlisle,
Washington, D. C., was on the brief, for
appellee and cross-appellant Stanley Co. of
America.

Before EDGERTON, PRETTYMAN
and PROCTOR, Circuit Judges.

EDGERTON, Circuit Judge.

In 1945 Kogod and Burka (K-B), theater
owners bought a site on MacArthur Boule-
vard in the District of Columbia and an-
nounced they would build a theater there.
About the same time Stanley Company
(Stanley), a wholly-owned subsidiary of
Warner Brothers, made a contract with
Kass Realty Company (Kass) by which
Kass agreed to build a theater on MacAr-
thur Boulevard and lease it to Stanley.
The Stanley site was about three blocks
from the K-B site, and the area could not
profitably support two theaters. K-B sued
to enjoin construction of the Stanley
theater on the ground that it was part of
a plan to perpetuate a Warner monopoly.
That suit resulted in a settlement evidenced
by three contracts.

Two of these contracts were between
Stanley and K-B and provided for aban-

doning the Stanley theater project and forming the MacArthur Corporation, with stock control divided between Stanley and K-B, to own and operate a theater on the K-B site. But the settlement depended on a three-party contract by which Kass agreed to cancel its contract with Stanley and received (1) $45,000 for canceling the proposed lease; (2) $15,000 for the sale of the unwanted Stanley site to the MacArthur Corporation; and (3) a promise by Stanley and K-B to designate within two years a site for another theater, to be built by Kass elsewhere in the District of Columbia, and to be leased to Stanley or, at Kass' option, to Stanley and K-B. Stanley and K-B agreed to pay Kass $100,000 as damages if they failed to designate a site. They did not agree on one during the two-year period. K-B designated one at Georgia Avenue and Shepherd Street, and Stanley one at New Hampshire and Ethan Allen Avenues.

In 1946, when the contracts of settlement were made, United States v. Paramount Pictures, Inc., D.C., 66 F.Supp. 323, Id., D. C., 70 F.Supp. 53, was pending before a three-judge court in the Southern District of New York. In May 1948 the Supreme Court affirmed a part of the Paramount decree which required Stanley to divest itself of all theaters held jointly with independents. United States v. Paramount Pictures, Inc., et al., 334 U.S. 131, 149, 68 S.Ct. 915, 92 L.Ed. 1260. A consent decree was afterwards entered in the District Court in New York which provided specifically that Stanley divest itself, by sale or dissolution, of its interest in the MacArthur Corporation.[1]

Meantime in June 1948 K-B brought the present suit against Stanley to compel Stanley to sell its interest in the MacArthur Corporation to K-B, and also to "determine the rights of the parties in the second theater to be constructed by Kass * * *" Kass intervened and claimed $100,000 damages because Stanley and K-B had not designated a site. Stanley answered K-B's complaint and filed a counterclaim. The court on its own motion dismissed the complaint, the intervening petition, and the counterclaim. It held the three contracts illegal *per se* as in restraint of trade. With respect to the three-party contract, the court held further that even if it "were not tainted with the same illegality as that of the original one between the plaintiffs and the defendant Stanley, there is no obligation on Kogod under its terms to *designate any site,* and Stanley is incapable of doing so either alone or in conjunction with Kogod by operation of law."

Though all parties appealed, before the case was argued K-B and Stanley moved to dismiss their appeals. Kass opposed the motions and we denied them in order to protect possible rights of Kass pending determination of his appeal.

The three-party contract expressly provided that the designation of a site must be made by both Stanley and K-B: "3. Stanley and K-B agree that within two (2) years from the date of this agreement they shall designate a site. * * * 4. If Stanley and K-B shall fail or refuse within two years from the date hereof to designate or to convey to Kass a site * * * Stanley and K-B jointly and severally hereby obligate themselves to pay * * * $100,-000." The District Court held that "the language is plain and unambiguous that K-B, with reference to [designating] the site has no rights except those it might exercise in connection with Stanley * * *" We agree. It is true that the contract provides "5. If Stanley shall be prevented from taking or participating in the taking of a lease on the theatre to be erected by Kass as aforesaid for reasons beyond its control, then K-B shall have the power and privilege, independently, to exercise the right herein granted jointly to Stanley and K-B. * * * In such event Stanley agrees to deposit * * * security for the performance by K-B of the terms, covenants and conditions of the lease * * *" But this language as we understand it gives K-B only the "power and privilege" to *take a lease,* "if Stanley shall be prevented from taking or participating in the taking of a lease", after a site has been jointly desig-

---

1. Equity Case No. 87–273, D.C., S.D.N.Y., December 21, 1948; unreported.

nated. We do not understand it to authorize *designation of a site* by K-B without the concurrence of Stanley. ·

█ Neither, we think, does the contract authorize Stanley to designate a site without the concurrence of K-B. The operative part of the contract plainly gives Stanley no such right. It is therefore immaterial that an introductory recital or "Whereas clause" states not only that "Kass is to lease to Stanley or to both * * *" ibut also that the site is "to be selected by Stanley or both * * *" For " 'if both the recitals and the operative part [of a contract] are clear, but they are inconsistent with each other, the operative part is to be preferred.' Ex parte Dawes, L.R. 17 Q.B. D. 275. See, also, Williams v. Barkley, 165 N.Y. 48, 58 N.E. 765." Wilson v. Towers, 4 Cir., 55 F.2d 199, 200. There is nothing technical about this rule. In making contracts, people pay more attention to the promises they actually give and take than to any attempts at summarizing or describing them. The promises themselves are therefore the most trustworthy as well as the most direct evidence of what the parties intend.

█ Since the contract does not permit either Stanley or K-B alone to designate a site, but requires them to agree on one, it is in effect a contract that the new theater will be so located that it will not compete with any other theater in which either Stanley or K-B is interested. Kass cannot be heard to complain of the failure of Stanley and K-B to carry out an agreement to suppress competition and extend monopoly in violation of the Sherman Anti-Trust Act, 26 Stat. 209, 15 U.S.C.A. § 3. The judgment dismissing the complaint of Kass is therefore affirmed. There is now no reason why the motions of K-B and Stanley to dismiss their appeals should not be granted.

No. 10399 affirmed.

Nos. 10398 and 10400 dismissed.