■ TRUMP VILLAGE SECTION 3, INC., Respondent, v NEW YORK STATE HOUSING FINANCE AGENCY, Appellant, and MONTOYA-RODRIGUEZ, P.C., et al., Respondents, et al., Defendants. [739 NYS2d 37] —Order, Supreme Court, New York County (Robert Lippmann, J.), entered January 5, 2001, which, denied defendant-appellant's motion for summary judgment dismissing the complaint as against it, unanimously reversed, on the law, without costs, and the motion granted. The Clerk is

directed to enter judgment in favor of defendant-appellant dismissing the complaint as against it.

Plaintiff, organized under the Limited Profit Housing Companies Law, consists of numerous apartments in three buildings constructed in 1962 under a loan from defendant Housing Finance Agency (H.A.) under the supervision of defendant New York State Division of Housing and Community Renewal (DHCR). In 1984, plaintiff became aware of structural problems with the buildings' facades and, upon being advised by engineers regarding specific repairs to terraces and spandrels to correct spalling, applied to H.A., under Private Housing Finance Law § 60, for funding to pay the expenses of repairs. H.A. referred the application to an independent engineering firm, Edwards & Hjorth, to obtain certification (*id.* § 60 [3] [a]), which was provided in 1984. The engineers specifically advised that spalled and deteriorated spandrel sections should be patched with "a non-shrink quick setting patching mortar, providing proper coverage for reinforcing bars." Upon issuance of the certification, plaintiff, H.A. and DHCR entered an "Agreement for Repair of Construction Defects" (Agreement), which stated that the goal was to effectuate "a long term solution to the capital problems * * * through the implementation of a repair program to correct the problems while assuring the economic stability of Trump." H.A. therein promised to pay for these specified defects and provide certain reimbursements to plaintiff. Also, the "scope and percentage allocation of costs * * * of all repairs necessitated by construction related problems * * * [will be] determined by the Edwards & Hjorth Report." In exchange for the funding, plaintiff agreed to "irrevocably waive[ ] any and all claims against H.A., DHCR, and the State in connection with the conduct of the Program or the work done pursuant thereto, except for claims for willful acts, willful omissions, or gross negligence." H.A. then solicited bids and selected a joint venture consisting of various contractors, architects and engineers to do the work. Plaintiff endorsed the contracts after its own engineering firm reviewed them. The joint venture, and plaintiff's engineering firm, certified in 1989 that the repairs had been completed and complied with specifications in the contracts, upon which plaintiff authorized payment of the contractors. In 1995, however, an architect retained by plaintiff identified spalling on numerous spandrels and exposed and rusted rebars, and recommended immediate repairs. Plaintiff then retained yet another engineering firm, which concluded that the repairs completed in 1989 had not been a long-term solution in that subsequent patching would be required on a regular basis, and

that the patching had not been done in an acceptable manner. This firm made recommendations for much more extensive repair work, including removal of the spandrels and their replacement with brick and mortar or, at the least, that the spandrels be covered with aluminum cladding. Although plaintiff asked defendants to inspect the building and demanded that the recommended repairs be done, defendants did not respond, with the consequence that the present action, consisting of numerous causes of action against several defendants, was filed. Our present review is limited to the two surviving claims against H.A. set forth in the third and fourth causes of action.

Our analysis is governed by the clear contractual terms under which the various parties operated. Plaintiff's waiver in the Agreement effectively bars its recovery, as against H.A., for any claims arising out of performance of the contract absent a demonstration of willfulness or gross negligence. Although the motion court found issues of fact in this regard, plaintiff, in order to survive the motion for summary judgment, was required, at the least, to come forward with some showing of such, and plaintiff has failed to do so. The failure to do so is augmented by the fact that its own engineering consultant had reviewed the contracts, and certified completion of the repairs. Nor can plaintiff sue H.A., which only provided financing, on a theory that H.A. had contractual supervisory responsibilities, an obligation not imposed on H.A. under the contract. Nor did the recital clause of the contract, evincing a goal of addressing plaintiff's long-term problems, impose contractual obligations on H.A. beyond those specifically set forth in the contract (see, *Ross v Ross*, 233 App Div 626, 635, *affd* 262 NY 381; *see also*, *Williams v Barkley*, 165 NY 48, 57)—namely, financing, but not overseeing, the repairs. Concur—Nardelli, J.P., Tom, Mazzarelli, Lerner and Buckley, JJ.